James S. **BESSECK**, Plaintiff,

v.

Robert H. **FINCH**, Secretary of Health, Education and Welfare (now Elliot L. Richardson), Defendant.

Civ. A. No. 69–C–39–A.

United States District Court, W. D. Virginia, at Abingdon.

April 20, 1972.

Robert T. Winston, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, District Judge.

This is an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education and Welfare, denying claimant's application for the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and for disability insurance benefits as provided by § 223 of the Act, 42 U.S.C. § 423.

On February 1, 1968, Besseck filed an application for a period of disability and for disability insurance benefits, alleging that he had been unable to work since May 29, 1967, because of loss of vision in his left eye, hypertension, an injured left hand, and broken vertebrae. His evidence also claims disability because of a character disorder. Claimant's application was denied initially by the Social Security Administration on March 14, 1968, and upon reconsideration on May 7, 1968. Besseck's request for a hearing was granted and the hearing examiner held that claimant was not entitled to a period of disability or to disability insurance benefits. The Appeals Council affirmed the hearing examiner's decision on March 21, 1969, thereby making the hearing examiner's

decision the final decision of the Secretary. After claimant instituted an action to review the Secretary's determination, this court, pursuant to 42 U.S.C. § 405(g), remanded the case to the Secretary for administrative proceedings. The Secretary, by decision of the Appeals Council rendered January 20, 1971, again held that claimant was not entitled to a period of disability or to disability insurance benefits. The case was reinstated on the docket, and both parties have renewed their motions for summary judgment.

■ The issue before the court is whether, from the record, the decision of the Secretary is supported by substantial evidence. "Substantial evidence" is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). For the reasons which follow, the court finds that the decision of the Secretary is so supported and must be affirmed.

■■ The claimant has the burden of proving that he is under a disability as defined by the Social Security Act, 42 U.S.C. § 416. Griffey v. Cohen, 299 F. Supp. 714 (W.D.Va.1969), aff'd. 421 F. 2d 187 (4th Cir. 1970). Of course, this burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964).

Claimant last met the special earnings requirements of the Act on December 31, 1967. Therefore, he must establish that his disability begaɴ on or before that date.

Claimant was forty-seven years old on May 29, 1967, the date that he allegedly became disabled. Claimant has a tenth grade education and a work history which includes jobs as busboy, a coal miner, a drill operator, a heavy equipment mechanic, a construction laborer and fireman, and a convict road construction guard. Besseck has not been employed since 1965, except for one week during 1966 and he has not attempted to find employment since 1966.

Claimant, in his testimony before the Hearing Examiner, gave the details of his various impairments. The injury to his left thumb resulted from an accident which he suffered at age eighteen while chopping wood. The thumb, even though it was surgically replaced, has been useless to claimant ever since the accident.

Claimant lost the vision in his left eye during World War II while he was in the Navy. Claimant does have good vision in his right eye, but he states that recently his eye impairment has caused him to see double, to have blurred vision, and to suffer severe headaches.

Claimant testified that his high blood pressure has caused him a great deal of difficulty. Besseck stated that he is unable to control his hypertension by medication or by limiting his salt in-take, although he indicated that his hypertension was controlled by medication and diet while he was in a Veterans Administration hospital for a week in June of 1967.

Besseck testified that, as a result of an automobile accident in 1951, vertebrae in his back had been injured. He sustained another back injury in 1958 or 1959, although this second injury caused him to be absent from work only long enough to see a doctor.

He stated that it is necessary for him to spend fifteen to sixteen hours a day in bed. He also complained of being very nervous and jittery.

Claimant's son, Michael Besseck, testified that he had worked with his father in 1965, when they were both hired to help start a new mine. The son's testimony was to the effect that, while his father tried to do the work, he simply was not able, and as a result he was carried along by Michael and the other workers. In his son's opinion, claimant was totally disabled.

The medical evidence in the record is not in substantial conflict. Claimant was first examined by the Veterans Administration on October 31, 1967. An eye examination revealed reduced visual

acuity in the left eye due to a healed chorioetinal condition. Vision in the right eye was good (20/15). Three blood pressure readings revealed claimant to be slightly hypertensive. These readings, however, were taken at a time when claimant was not taking medication for his blood pressure. Investigation of claimant's back condition disclosed tenderness in the mid and upper back, but there was no muscle atrophy, spasm, or loss of motion discovered. The report notes that claimant complains of pain in this region, but there was no discomfort or complaint with respect to the lower back. X-rays of the spine, while not revealing any fractured vertebrae, did reveal slight osteoarthritis and very early arthritic changes. Visual and x-ray examination of claimant's left thumb indicated that it was fused at its base.

A psychiatric evaluation made by the Veterans Administration showed that claimant was in good contact, well oriented, of normal intelligence, and not psychotic. The psychiatric diagnosis was anxiety reaction with depressive features and somatization.

■ Claimant does receive monthly compensation from the Veterans Administration on account of both service-connected and nonservice-connected impairments, although he was found to be entitled to total and permanent nonservice-connected pension benefits. The Veterans Administration determined that Besseck was totally and permanently disabled as of May 29, 1967. This determination, while entitled to consideration by the Secretary, is not binding upon him. 20 C.F.R. § 404.1525; Darter v. Cohen, 299 F.Supp. 473, 476 (W.D.Va.1969); Vicars v. Gardner, 285 F.Supp. 527, 533, n. 3 (W.D.Va.1968).

A medical report, dated February 14, 1968, from Dr. H. E. Pierson, claimant's treating physician, indicates that claimant had been examined monthly since May 25, 1967. Claimant's blood pressure was recorded as 190/100, but this reading was taken before the administration of antihypertensive therapy. Besseck was diagnosed as having essential hypertension, a mild to moderate anxiety state, and a partial decrease of visual acuity in the left eye.

The record also contains a letter submitted by Dr. W. A. Davis on May 20, 1968, which states that Besseck was not acceptable for employment with the Clinchfield Coal Company because of his visual impairment.

On June 21, 1968, Besseck was examined by Dr. Marshall D. Hogan, Jr., a psychiatrist. Dr. Hogan concluded his report with the following:

"The patient is of full average intelligence and good judgment. He is oriented in all spheres and his memory intact for both recent and remote events. His speech content, though quite grandiose and pseudo-intellectual in nature, is coherent and relevant. He evidences neither illusions, delusions, nor hallucinations.

"The diagnosis seems to me to be a differential between schizophrenic reaction, undifferentiated type, and character and behavior disorder, schizoid type. I believe the patient, in the absence of any history of actual break with reality, to be suffering from a schizoid disorder of severe proportions. This is certainly manifested by his rather nomadic life, his living alone, his extremely pseudo-intellectual speech content and mannerisms, and his fancy dress . . . , and his obvious disdain for the 'common herd.' He is certainly mentally competent and capable of handling his own funds."

After the case was remanded, further medical evidence was received. Two additional reports, one dated July 27, 1970 and the other dated October 29, 1970, were obtained from Besseck's treating physician, Dr. Pierson. Claimant was diagnosed as having essential hypertension, which was being controlled with difficulty, on an outpatient basis, by use of antihypertensives and tranquilizers.

Claimant's condition was described as static, but prognosis was guarded.

Dr. Pierson's second report revealed that claimant had responded favorably to antihypertensive therapy after February 14, 1968, claimant's systolic and diastolic pressures each having been lowered thirty points at times. For the most part, the blood pressure had been kept within the borderline or lower hypertensive range. As of December, 1967, when he last met the special earnings requirements, claimant's functional capacities were average, and he was able to sit, stand, and walk about without difficulty. He was easily able to carry items weighing from ten to fifteen pounds, but, occasionally, bending did produce transient dizziness.

Besseck was examined by Dr. Jose Bofill on November 10, 1970. Vision in the right eye was 20/25, but vision in the left eye was zero. Dr. Bofill felt that the blindness in the left eye could be reduced to ten or fifteen percent and recommended that claimant be referred to an ophthalmologist. Claimant's spine was found to be normal, with a normal curvature. There was no stiffness in the neck. The blood pressure reading was 184/120 before exercise and 200/120 after exercise. Dr. Bofill diagnosed claimant as having an arteriosclerotic cardiovascular disease, essential hypertension, which was moderately severe, slight fibrosis, emphysema, infrahilar pneumonitis, schizoid behavior, and anxiety.

Dr. Bofill was of opinion that Besseck's condition in December, 1967 was the same as or less severe than it was in November, 1970. Dr. Bofill thought that, as of December, 1967 and the date of the examination, Besseck possessed normal residual function capacity for sedentary, light, and moderate activity. The hypertension was not found to be malignant, and Dr. Bofill was of opinion that the hypertension was amenable to therapy prior to, on, and after December 31, 1967.

Claimant alleges that he is disabled because of blindness in his left eye, an injured left thumb, a back impairment, a character disorder, and hypertension.

The Secretary does not dispute that claimant does have certain medically determinable impairments. The mere presence of a disease or impairment, however, is not, in and of itself, disabling. To be disabling, the impairments must be of such severity that the claimant is rendered unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). In considering whether claimant was disabled within the meaning of the Act, the Secretary properly considered the total effect of all of claimant's impairments, against the background of claimant's educational background, work history, and age. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968).

Claimant's proof shows that two of his impairments have been with him for many years. His left thumb was injured when he was eighteen years old, and his left eye was injured while he was in the Navy in World War II. It appears that, while claimant might have been handicapped by these injuries, he overcame his difficulties and went on to work at skilled and often dangerous occupations. There is no medical evidence whatsoever to support Besseck's claim that his eye impairment has recently caused severe headaches, blurred vision, and double vision. In fact, the evidence shows that the vision in his right eye is quite good. As the evidence does not show that either his back or eye impairment has worsened, neither can now be considered of itself to be disabling. Ferrell v. Gardner, 260 F.Supp. 996, 1001 (S.D.W.Va.1966). Furthermore, Dr. Bofill indicated that the blindness in claimant's left eye could be substantially reduced with proper treatment. If an impairment reasonably can be remedied by treatment, it cannot serve as a basis for a finding of disability. Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965); Hevener v. Finch, 315 F.Supp. 878 (W.D.Va.1970).

Claimant also alleges that he is disabled because of a back injury which he received in an automobile accident in 1951. None of the orthopedic examinations of claimant's back reveals any back impairment other than normal arthritic changes. These examinations reveal a normal spine and a normal range of motion with no atrophy or spasms. It is also noted that Besseck did heavy work for many years after 1951 without complaint on account of his back injury.

The medical evidence shows that claimant is suffering from a character disorder of longstanding duration. This character disorder was characterized somewhat differently by the examining physicians. The Veterans Administration's doctors diagnosed claimant's condition as an anxiety reaction with depressive features and somatization. Dr. Pierson called it a mild to moderate anxiety state. Dr. Hogan diagnosed Besseck's problem as a differential between schizophrenic reaction, undifferentiated type, and behavior disorder, schizoid type. Dr. Bofill described claimant's character disorder as schizoid behavior and anxiety. With the possible exception of Dr. Pierson's report which notes that tranquilizers were used in treating claimant's hypertension, the evidence does not show that claimant has ever undergone treatment for his anxiety reaction. The Veterans Administration, while diagnosing an anxiety reaction, also said that claimant was not psychotic and that he was of normal intelligence and competent. In addition, Dr. Hogan said that Besseck had average intelligence and possessed good judgment. He was oriented in all spheres, and his memory was intact. He evidenced neither illusions, delusions, nor hallucinations. Dr. Hogan also said that claimant was " . . . certainly mentally competent and capable of handling his own funds." There is substantial evidence to support the Secretary's conclusion that claimant's character disorder is not disabling.

■ Another allegedly disabling impairment is claimant's hypertension. There was no evidence of cardiovascular change, often associated with high blood pressure, until Dr. Bofill's examination in November, 1970. The evidence shows that the examining physicians found that claimant's blood pressure was elevated, and although somewhat unclear, it appears that most, if not all, of the elevated readings in the record were recorded when claimant was not taking antihypertensive medication. In any event, Dr. Pierson stated that after treatment, the systolic and diastolic had at times each been lowered thirty points. He found that claimant's blood pressure could be kept within the borderline or lower hypertensive range through use of antihypertensive treatment. Dr. Bofill clearly indicates that claimant's hypertension was controllable by treatment on an outpatient basis on or before December 31, 1967, as well as at the time of the examination in November, 1970. Controllable impairments are not disabling impairments. Stillwell v. Cohen, 411 F.2d 574 (5th Cir. 1969); Purdham, supra; Hevener, supra; see also C.F.R. § 404.1507.

Furthermore, Dr. Pierson was of opinion that, with therapy, claimant's functional capacities were average. Dr. Bofill also though that, under treatment, claimant had the functional capacity to engage in sedentary, light and moderate activities, and in strenuous activities except on a sustained basis.

■ Inasmuch as the Secretary concluded that claimant was capable of performing some of the jobs which he had held in the past, involving only light or sedentary work, and this finding was supported by substantial evidence, it was unnecessary to show that there were other jobs existing in the national economy which claimant was capable of performing. Frankum v. Celebrezze, 343 F.2d 426 (4th Cir. 1965); Brown v. Celebrezze, 347 F.2d 227 (4th Cir. 1965); May v. Gardner, 362 F.2d 616 (6th Cir. 1966).

The court is of opinion that claimant has not sustained his burden of proof, as the term must be applied in Social Secu-

rity cases, for there is substantial evidence to support the conclusion of the Secretary that claimant's impairments, singularly or in combination, do not entitle him to a period of disability or to insurance benefits.

An order is this day entered consistent with this opinion.