Thomas S. WILLIAMS

v.

David MATHEWS, Secretary of Health, Education & Welfare.

Civ. A. No. 76–258.

United States District Court, M. D. Louisiana.

Sept. 21, 1978.

William C. Kaufman, III, Seale, Smith & Phelps, Baton Rouge, La., for plaintiff.

Dona!d L. Beckner, U. S. Atty., Darrell D. White, Asst. U. S. Atty., Middle District of Louisiana, Baton Rouge, La., for defendant.

E. GORDON WEST, District Judge:

This action is brought under Section 205(g) of the Social Security Act, 42 U.S.C. Section 405(g), for judicial review of a decision by the Secretary of Health, Education & Welfare denying the claimant's application for disability insurance benefits under Sections 216(i) and 223 of the Act, 42 U.S.C. Sections 416(i) and 423. This case being appropriate for summary judgment, it is submitted on the record and briefs of counsel.

The plaintiff, Thomas S. Williams, filed his original application for disability insurance benefits on May 25, 1971. The initial

determination was adverse to the plaintiff and he requested a reconsideration on August 25, 1971. The Administrative Law Judge reconsidered plaintiff's case but still denied recovery. The Appeals Council affirmed. On April 25, 1975, plaintiff made another application for disability insurance benefits. Plaintiff was again determined to be ineligible for benefits. He requested reconsideration on November 14, 1975. The Administrative Law Judge reviewed the record and still found the claimant not disabled. The Appeals Council affirmed this decision on June 28, 1976. Plaintiff applied to this court for review of the prior administrative findings and the case was remanded for further administrative action. The Administrative Law Judge rendered a decision on January 17, 1978 finding the plaintiff was not disabled. This ruling was affirmed by the Appeals Council on March 31, 1978. Plaintiff is now before this court seeking judicial review of the final decision of the Secretary denying coverage.

This case presents the classic conflict between the testimony of various doctors who were called upon to examine the plaintiff and testify in this case. The role of this court is to determine if the decision of the Secretary is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1970); *Goodman v. Richardson,* 448 F.2d 388 (5 Cir. 1971) and *Turner v. Califano,* 563 F.2d 669 (5 Cir. 1977).

This case does not lend itself to such an easy resolution. The medical testimony and evidence is voluminous. The conflicts of opinions require this court to look to the settled rules of law as regards this court's function as well as the threshold criteria of "substantial evidence" in deciding this case with its conflicts.

■ One major signpost which this court cannot lose sight of is that of the limited role placed upon this court. We are not in a position to "reweigh" the evidence. *Lewis v. Weinberger,* 515 F.2d 584 (5 Cir. 1975). This rule is also part of the controlling basis for what this court's role is in this situation. We are to make a determination of whether

or not the Secretary's decision is supported by "substantial evidence" in the record. If this is found to be true, then this court can go no further. To aid our function we are obliged to use the concept of the "reasonable man." That is, that degree of evidence which a reasonable mind might accept as adequate to support the conclusion of the Secretary. *Dubose v. Mathews,* 545 F.2d 975 (5 Cir. 1977); *Yawitz v. Weinberger,* 498 F.2d 956 (8 Cir. 1974) and *Talifero v. Califano,* 426 F.Supp. 1380 (W.D., Mo., 1977).

In this respect, the record presents sufficient evidence to support the Secretary's decision. While we have no doubt that Mr. Williams has sustained some serious injuries, this court is not clothed with the authority to blatantly overthrow the medical evaluations of the five physicians who found the plaintiff was in fact capable of various sedentary or light jobs.

■ There are four elements of proof which this court weighs in its determination of the "substantial evidence" criteria. These are: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) the subjective evidence of pain testified to by the claimant and corroborated by his wife and family doctor; and (4) claimant's educational background, work history, and present age. *Roe v. Califano,* 433 F.Supp. 1157 (D., Md., 1977). This court finds that while the plaintiff has succeeded partially in some of these aspects, the medical facts in the record affirm the Secretary as regards numbers (1), (2), and (4).

■ The initial burden of proof is upon the claimant to establish his disability. After the plaintiff has accomplished this it is incumbent upon the Secretary to either prove the plaintiff is not disabled or is still capable of other substantial gainful employment activity. *Knott v. Califano,* 559 F.2d 279 (5 Cir. 1977) and *Timmerman v. Weinberger,* 510 F.2d 439 (8 Cir. 1975).

A partial recapitulation of the tremendous amount of medical evidence is needed

**1128**

to place this case in a proper perspective. Both before and during the pendency of his disability claim, plaintiff has been examined by seven physicians for the purpose of establishing whether or not he is disabled. A brief review of the medical findings of these doctors is imperative. Dr. J. Willard Dowell, an Orthopedist, examined the plaintiff on July 30, 1971 and concluded that the plaintiff was totally disabled as far as work which required standing on his feet for a long period of time. In general, Dr. Dowell found plaintiff flexed his back well, had normal tendon reflexes of the legs, but noted some sensory deficit over the lateral part of the right thigh, and X-rays revealed no significant bone abnormalities in the lumbosacral spine. Dr. Dowell's report concurs with the other doctors that plaintiff cannot perform any heavy or moderate work or work with prolonged standing. However, Dr. Dowell indicates no limitation on plaintiff as regards light or sedentary work where movement is optional.

Dr. Richard M. Pullig, a General Practitioner, has been plaintiff's family doctor for approximately twenty years. In a report dated June 14, 1971 Dr. Pullig classified plaintiff as having a severe injury to this right leg with some weakness and said he was permanently damaged. In a handwritten letter dated July 7, 1977 Dr. Pullig stated he felt the plaintiff was disabled for sedentary type jobs and that he was referring the plaintiff to Dr. Moss M. Bannerman for further evaluation.

Dr. John F. Piker, a General Surgeon, felt plaintiff was totally disabled for full time employment on July 19, 1972. The facts were that the plaintiff had severely sprained his left ankle and tore some ligaments, which combined with the weak right leg caused plaintiff's mobility to be very limited. However, Dr. Piker does not state that plaintiff will be permanently disabled nor does he evaluate plaintiff's ability to retain sedentary work or part-time employment. This factor is discussed in a letter dated May 12, 1975 wherein Dr. Piker indicates that while the plaintiff was classified as disabled before, he is now capable of some work. In an apparent effort to clarify any ambiguity an HEW worker contacted Dr. Piker on May 16, 1975 and asked if plaintiff could perform sedentary work. The report indicated that the doctor said the plaintiff could probably perform a sedentary job with no difficulty. Also, the plaintiff's problem with the left ankle had been alleviated to the point that no cane was needed for assistance.

Dr. Charles B. Cracraft, an Orthopedist, examined Mr. Williams on two occasions. On March 20, 1973 the doctor concluded his examination with the following statement:

"I do not believe the patient could do any type of work requiring any amount of walking, standing, climbing, walking over uneven ground or the like. He should be able to do most any type of work where he could be seated most of the time without difficulty."

Again on January 12, 1976 Dr. Cracraft examined the plaintiff and found he had an additional illness, that being a cataract of the left eye. Dr. Cracraft still felt the plaintiff could not do any physical work and that until the cataract was removed he could do no work which required the use of his eye. Also, Dr. Cracraft found the sedimentation rate for plaintiff to be slightly more than normal.

On January 6, 1976 Dr. Lionel Smith, an Ophthalmologist, determined that the plaintiff had a cataract and recommended its removal. This removal was effectuated by a doctor at the Veteran's Hospital in Jackson, Mississippi in September of 1976.

On May 31, 1977 Dr. James F. Halley, an Orthopedist, conducted a medical exam for the purpose of establishing disability. Dr. Halley classified the plaintiff as *not* disabled and concluded his report as follows:

"I feel that this man would have difficulty doing work requiring excessive walking and climbing, standing or lifting because of the right thigh injury with the subsequent weakness. I feel he could do work of most any sedentary nature not requiring the above mentioned limitations."

Dr. Jerome E. LeVine, an Ophthalmologist, saw the plaintiff on June 6, 1977 and found the plaintiff to be recovered from the cataract problem which had existed before. Dr. LeVine did place minimal visual limitations on the plaintiff and prescribed contact lenses.

Dr. Norman P. Morin, an Orthopedist, has never conducted a medical exam of the plaintiff. He has reviewed all the medical evidence and reports of the other physicians and watched the plaintiff during the hearing before the Administrative Law Judge. It is Dr. Morin's opinion that the plaintiff is only disabled as to heavy or moderate type jobs and that he can still perform light or sedentary work.

Finally, Dr. Moss M. Bannerman, an Orthopedist, made the latest medical examination of the plaintiff at the specific request of Dr. Pullig, plaintiff's own personal family physician, for the purpose of making a determination of the nature and extent of plaintiff's medical problem. Dr. Bannerman's report is probably the most objective report issued. Its importance is realized by quoting the letter in which Dr. Bannerman evaluated the plaintiff based on the August 10, 1977 examination by stating:

> "Recommendations: This patient is unable to perform any type of heavy work. Due to the fact that he develops pain in his back after sitting for a period of time his work should be light in nature and must be of a type where he can change positions more or less at will and still accomplish his duties. It is my belief that the types of jobs he can perform are limited but are probably of those mentioned as a cashier in a parking lot or a customer service representative. It is of interest that during the time I have seen him the use of some medication has given him some relief and when last seen on August 2, 1977 the use of a low back support was recommended to him also. Whether or not these will improve him sufficiently to allow him greater versatility remains to be seen."

Therefore, based on the aforementioned medical reports issued by the named physicians the Secretary determined that the plaintiff was *not* disabled. There is certainly "substantial evidence" in these medical reports which supports the Secretary's determination. All of these medical reports must still be applied to the type of employment which the plaintiff could obtain; that is, is there substantial gainful employment which the plaintiff could qualify for and obtain.

The test for "substantial and gainful employment activity" is not an easy one. First of all, the Secretary must establish that employment is reasonably possible and not merely conceivable. *Hodgson v. Celebrezze,* 357 F.2d 750 (3 Cir. 1966). In the plaintiff's particular case the Secretary relies upon the testimony of a vocational expert, Mr. Elton D. Chatelain, in finding that the plaintiff is capable of light or sedentary work. This, coupled with the medical evaluations of Doctor's Dowell, Pullig, Piker, Cracraft, LeVine, Halley, Morin and Bannerman, is sufficient to support the Secretary's decision that there is work in the national economy for which the plaintiff can qualify. This court cites the plaintiff's particular work experience and educational training as additional factors which support the Secretary in his determination that the plaintiff is employable.

Plaintiff cites with vigor the prior determination by the Veteran's Administration that he is totally disabled. Certainly this can be used as persuasive evidence, however, it is in no way binding on the Secretary or this court. *Besseck v. Finch,* 342 F.Supp. 957 (W.D., Va., 1972); *Cooper v. Richardson,* 333 F.Supp. 249 (S.D., W.Va., 1971) and *Clark v. Weinberger,* 389 F.Supp. 1168 (D.Vt., 1974), affirmed, 511 F.2d 1390 (2 Cir. 1975).

When reviewing the four basic elements of proof as aforementioned, this court is compelled to find that the following is evident in the record: (1) The objective medical facts show at best, when viewed in the light most favorable to the plaintiff, that there is conflicting medical evidence as regards plaintiff's disability. It is the func-

tion of the Secretary to resolve any conflict in the evidence and as long as this is supported by the record it must be affirmed. *Walker v. Mathews,* 546 F.2d 814 (9 Cir. 1976) and *Sorenson v. Weinberger,* 514 F.2d 1112 (9 Cir. 1975). (2) The diagnosis and expert opinions of the treating and examining physicians also present conflicting evidence with regard to subsidiary questions of fact, such as, whether the plaintiff can perform light or sedentary type work, whether the plaintiff can be aided by proper medication and support devices, and to what extent surgery has already helped the plaintiff. Once again the Secretary has resolved the conflict in the medical evidence and this court finds "substantial evidence" in the record upon which the Secretary could base his decision. (3) The subjective evidence of pain which the plaintiff testified to and which was corroborated by his wife and treating physician, Dr. Pullig, was fully recognized by the Secretary and by this court. On this point the plaintiff fully carried his burden and all parties agree. (4) The claimant's educational background, work history, and present age indicate that the plaintiff still has several years of work life remaining. Plaintiff is a college graduate in the field of agriculture and has worked in the agriculture area, the teaching area, and in the independent business arena during his life. The record presented in this case leads this court to concur with the Secretary in his determination that the plaintiff is still a productive individual.

Thus, when the aforementioned conflicts are viewed in the context which this court has expressed herein, they resolve themselves in favor of the Secretary. This court is mindful of the fact that we must consider all of the plaintiff's ailments, with their multiple effects. *Dressel v. Califano,* 558 F.2d 504 (8 Cir. 1977) and *Locklear v. Mathews,* 424 F.Supp. 639 (D., Md., 1976). However, when the plaintiff's multiple impairments are taken "in toto" and viewed in the light of the four burdens of proof which are used for the analysis, the Secretary's decision is supported by "substantial evidence" in the record.

Therefore, under the guidance of *Richardson v. Perales,* supra, this court finds that the Secretary did resolve the conflict of testimony such that the decision is fully supported by substantial evidence in the record. The Motion for Summary Judgment filed on behalf of the plaintiff, Thomas S. Williams, is denied. The Motion for Summary Judgment filed on behalf of the Secretary of Health, Education & Welfare is granted.

Judgment will be entered accordingly.