Mary TALIFERO, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant.

Civ.A. No. 75CV795–W–4.

United States District Court, W. D. Missouri, W. D.

March 9, 1977.

Mary Christine Hodgson, Legal Aid & Defender Society, Kansas City, Mo., for plaintiff.

Frederick O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for defendant.

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO THE SECRETARY OF HEALTH, EDUCATION, AND WELFARE AND, ACCORDINGLY, DIRECTING SECRETARY TO TAKE ADDITIONAL EVIDENCE AND MAKE NEW FINDINGS

ELMO B. HUNTER, District Judge.

This is a petition for review, under the provisions of § 405(g), Title 42, United States Code, of a denial of disability benefits to plaintiff by the Secretary of Health, Education, and Welfare. Under the governing provisions of § 405(g), *supra,* it is the function of this court to review the administrative record, primarily to determine whether the decision of the Secretary that the plaintiff suffers no medically determinable physical or mental impairment (which has lasted, or can be expected to last, 12 months or more and which prevents her engaging in substantial gainful activity [1]) is supported by substantial evidence.[2]

The administrative record which has been submitted [3] to the court in the action

---

1. "Disability" is defined in the Act, as pertinent to this action, as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Section 423(d)(1)(A), Title 42, United States Code.

2. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ." Section 405(g), Title 42, United States Code.

3. "As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." Section 405(g), Title 42, United States Code.

at bar shows the following: Plaintiff filed her application for disability benefits with the Social Security Administration on June 25, 1974. Therein, she alleged that she became unable to work on April 15, 1973, at the age of 55 years, because of "surgery for polyps on intestines [and] high blood pressure." (Tr. 48.) The application was successively denied throughout the preliminary administrative processes within the Social Security Administration.[4] Thereupon, plaintiff requested a hearing and determination of her application by an administrative law judge. The requested hearing was held on May 23, 1975, and the following evidence was presented to the administrative law judge in connection therewith:

(1) Plaintiff appeared at the hearing, without counsel, and testified that she has tried, without success, to drive the family car[5]; that she has completed the 11th grade in her education (Tr. 29) and has no training of any other kind (Tr. 30); that she is unable to bend and therefore cannot perform any "of the jobs here" (Tr. 30); that her work experience includes 6 years at the Continental Hotel and 1 year at the Phillips Hotel, experience as a waitress and dishwasher in several restaurants[6] (Tr. 31) and she last worked at "washing [and ironing] clothes for doctors and nurses" at this "Emergency Hospital on 39 and Bell" (Tr. 32); that she has not attempted to work since that time because "I don't care how light a job is, you do have to bend, and I have quite a lot of trouble with my heart" (Tr. 34); that her upper left chest had been "hurting" for about 3 or 4 months (Tr. 35); that she also has arthritis in her left foot which causes her knee to swell up if she does "a lot of walking"[7] (Tr. 35); that she has solicited for a job as a dishwasher or a maid, but now is generally told that she is "too old" for that type of work (Tr. 37); that she fixes breakfast for her husband and son, does the housework (except the sweeping of the floors, which her husband does[8]) (Tr. 40), sometimes sews, and sometimes "walk[s] through the stores," fixes other meals (Tr. 41–42) and reads (Tr. 42); that, at the time of the hearing, "I'm some better because . . . before I was operated on, my stomach hurt all the time [and] I'm suffering most now just shortness of breath" due to high blood pressure (Tr. 43); and that she is unable to perform the physical activity required of a maid or dishwasher (Tr. 44–45).

(2) The following medical evidence was presented to the administrative law judge:

(a) Medical records of the University of Kansas Medical Center pertaining to plaintiff's intermittent admissions to that institution from July 24, 1957, to July 16, 1964. These records show that plaintiff was admitted on July 24, 1957, "for delivery of a full term infant" (Tr. 75); that she had previously been pregnant some 13 times; that plaintiff then had "cardiac symptoms and probable digitalis intoxication" (Tr. 75);

---

4. The initial determination of disability *vel non* on the application for benefits is ordinarily made by the state vocational rehabilitation agency, see Section 421(a), Title 42, United States Code, or by the Secretary "in accordance with regulations prescribed by him," see Section 421(g) of the same title, and it may then be reconsidered by the Secretary. See Section 421(c) of the same title. Thereafter:
 "Any individual dissatisfied with any determination . . . shall be entitled to a hearing thereon by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."
 Section 421(d), Title 42, United States Code. See also Section 405(b) of the same title.

5. Even if she had been successful, "the mere fact that plaintiff can drive a car and is mobile does not establish that he can engage in substantial gainful activity." *Robinson v. Richardson,* 360 F.Supp. 243, 250 (E.D.N.Y.1973), quoted in *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir. 1974).

6. Plaintiff stated that she worked at Nichols' Cafeteria, Putsch's and Sidney's in the Kansas City area. (Tr. 31.)

7. Plaintiff further stated that, if she did a lot of walking, "my knees swell up" and that "that'd be why I left Continental Hotel because my knee stayed swelled, you know, all the time, and I just couldn't work on it." (Tr. 35.)

8. Her sons also aid her in sweeping and housecleaning. (Tr. 41.)

that plaintiff ultimately "delivered twins" and suffered several minor post-partum effects including "[i]ntestinal polyposus" (Tr. 76); that, on July 31, 1957, she was the subject of a "[s]mall bowel decompression resection [of the] small bowel" (Tr. 77) in the course of which some of the polyps were excised (Tr. 78) and plaintiff was diagnosed as having symptoms "compatible with Peutz-Jegher syndrome" (Tr. 80); that she was again admitted to the medical center "with a five day history of right lower abdominal pain with radiation in the leg" on April 24, 1958; that "[s]he had a history of eclampsia" (Tr. 81); that, throughout her subsequent stay in the hospital until April 27, 1958, her "symptoms and signs were vague and did not follow any anatomical or physiological pattern"; that, accordingly, she was released on April 27, 1958, without diagnosis; that plaintiff was again admitted to the medical center on May 8, 1958, after an "incomplete abortion" for "dilatation and curettage" (Tr. 82); that she was again admitted on July 8, 1964,[9] reporting constant menstruation with "lower abdominal pain, worse in the right lower quadrant radiating to the right leg" (Tr. 84); that tests showed her to have "Grade II hypertensive retinopathy" and "a grade II systolic murmur along with the left sternal border" (Tr. 84); that "[a]bdominal examination revealed some tenderness in the lower abdomen [and] no palpable masses or organs" (Tr. 84); that "[p]elvic examination revealed a first degree cystocele and descensus" (Tr. 84); and that her "final diagnosis" was:

"Post menopausal bleeding.
Squamous metaplasia of cervix.
Cystocele.
Descensus.
Arteriosclerotic heart disease.
Essential hypertension." (Tr. 85.)[10]

(b) Medical reports of the University of Kansas Medical Center show that plaintiff was hospitalized there from April 15, 1973, to April 23, 1973, with a diagnosis of "Peutz-Jeghers syndrome"[11] (Tr. 90). During her stay in the hospital an "exploratory laparotomy with colotomy and multiple polypectomies" was performed and she was released on April 23, 1973, to "[r]eturn to clinic in three weeks" with "[e]xcellent prognosis." (Tr. 90.)[12]

(c) On June 6, 1974, plaintiff returned to the medical center complaining of shortness of breath, "difficulty getting breath," swelling of her legs, and frequent coughing. She was given some pain medications and advised to "lose weight"[13] (Tr. 95).

(d) A report of E. L. Slentz, M.D., dated June 25, 1974, was to the following effect: that plaintiff claimed that she is disabled "by reason of pain in her left foot and knee, residual abdominal problems from prior surgery and shortness of breath"; that "[m]enstrual history reveals that she has had 22 pregnancies, eleven of which ended in miscarriages and one of which was a still birth"; that she has symptoms "typical of the Puetz-Jeghers syndrome"; that her pulse is 72 and blood pressure 150/95; that she has "a normal chest x-ray with the cardiac shadow being at the upper limits of

9. The medical records show that plaintiff stayed in the hospital some eight days before being discharged on July 16, 1964. Examinations and tests conducted during this period of time showed plaintiff to have a blood pressure level of 160/90, a pulse rate of 84 per minute, a "Grade II hypertensive retinopathy, "a grade II systolic murmur along the left sternal border," and a "chest film (which) showed minimal cardiac enlargement." (Tr. 84.) A biopsy performed after her cervical operation resulted in a diagnosis of "Acute and chronic ulcerative cervicitis with focal atypical basal cell hyperplasia." (Tr. 88.)

10. See note 9, supra.

11. This diagnosis is one of some longstanding. It was initially made in June 1957. See pages 1383–1384 of the text of this memorandum, supra.

12. The prognosis is apparently intended to be restricted to the polypectomy which plaintiff had undergone. The report in the administrative record which concerns this hospitalization does not make any mention of plaintiff's other multiple afflictions.

13. Tests conducted during this hospitalization revealed plaintiff's blood pressure to be 160/100 and her heart rhythm to be "76 and occasional PAC." (Tr. 95.)

normal in size"; that she "has a congenital condition with recurrent polyps of the colon [which] is dangerous in that they may undergo malignant degeneration" but "[a]t the present time there is actually no disability from this condition"; and that:

"She does have a mild degree of osteoarthritis involving her knee and has flat feet which she indoubtedly has had all her life. She may very well have angina pectoris although her electrocardiogram did not confirm this conclusively. She does have chest pain on rather minimal exertion and she does have definite pain with exertion with relief by rest. She does have a mild degree of hypertension." (Tr. 99–100.)

(e) She returned again to the medical center on July 25, 1974, whereupon her "major complaint" was constant dull aching pain with slight swelling" of the left foot. It was the "impression" of the attending physician that plaintiff was "probably" suffering from "sprain" and it was "plan[ned]" to x-ray the painful area. (Tr. 96.)

(f) Again, on September 23, 1974, plaintiff was cursorily examined in the medical center, still complaining of pain in her left foot. It was noted that the "5th toe deviated laterally"; that the "foot [is] painful to palpation"; and that "motion [is] limited in all directions by pain." (Tr. 97.) The diagnosis was "gout," "structural abnormality," and "strain." (Id.)

(g) Subsequently in 1974, plaintiff was treated on an outpatient basis in the University of Kansas Medical Center for her foot and chest pains, her shortness of breath, and varicose veins (Tr. 105–113). She continued to report "chronic ankle pain" and was prescribed the painrelieving drug, Darvon (Tr. 106). She continued to have a grade II systolic murmur and there was A–V nicking. (Id.) In October 1974, x-rays led to a diagnosis of "mild degenerative arthritis" in the left ankle. (Tr. 107.) Her pain in the ankles and swelling tended to increase throughout 1974 and early 1975.

(Tr. 108.) She had episodes of chest pain, culminating in new diagnosis of "probable angina" and "essential hypertension" requiring "no medications at present." (Tr. 109.) A radiology consultation on March 27, 1975, resulted in findings that "[t]he heart is at the upper limits of normal in size; [t]he lungs are clear [and] [n]o congestive failure is demonstrated." (Tr. 113.)

(h) David M. Pugh, M. D., Associate Professor of Medicine at the University of Kansas Medical Center, rendered a written report under the date of April 14, 1975. (Tr. 114–115.) He stated that plaintiff suffers from "documented essential hypertension"; that she "has a history of two months of exertional chest pain brought on by walking 3 blocks on level ground"; that "blood pressure is 140/85 and pulse 82 and regular with rare extra systole"; that "[t]here is a grade II hypertensive change in the fundi and the remainder of the HENT is normal"; that "[t]here is a grade II systolic ejection murmur along the upper left sternal border"; that a recent chest x-ray showed "the heart to be at the upper limits of normal in size with slight left ventricular prominence" and, on a treadmill exercise test, normal results were obtained; that she suffers, with her "mild hypertension," "probable recent onset of angina pectoris"; and that:

"We believe that she could participate in mild physical activity such as caring for herself and light household duties or sedentary work elsewhere. She should not be required to perform moderate or heavy physical activity." (Tr. 115.)

(i) On April 2, 1974, the Social Security Administration contacted W. R. Jewell, M. D., of the University of Kansas Medical Center staff. According to the report of the "disability interviewer, the following was the substance of Dr. Jewell's oral report:

"Claimant's impairments should not prevent all SGA.[14] She made a satisfactory recovery from surgery at AOD, and can

14. Apparently, this abbreviation is intended to stand for the phrase, "substantial gainful activity."

engage in average work activity not requiring protracted bending or lifting heavy weights. Claimant is only 56 years of age and has a good education, and states she has no regular type of job. We note claimant states she has a cough, but hospital reports indicate there is no abnormality of the lungs. Therefore, we assume plaintiff has the residual capacity to do light/sedentary work, and use the upper extremities in a normal fashion." (Tr. 71.)

This "report of contact" was made the sole basis for initial denial of plaintiff's application, together with information which was apparently taken from an encyclopedia of job descriptions to the following effect:

> "Examples of unskilled jobs, sedentary, that can be learned in up to 30 days on the job training or by a short demonstration are: Polisher (optical goods, 713.884); Hinge assembler (jewelry cases, 692.885); and Cuff folder (knit goods 685.887). Therefore, we find claimant under no disability." (Tr. 71.) [15]

On the basis of the foregoing evidence, the administrative law judge issued his decision on June 25, 1975, denying disability benefits to plaintiff. In evaluating the evidence, he stated in part as follows:

> "The medical evidence shows that the claimant has had multiple surgeries including a laparotomy in 1973 for multiple colon polyps, but she has recovered satisfactorily from these operations. She complained of chest pains and was on medication starting April 3, 1975, of Propranolol 20 mg. q. i. d. . . . The heart [was] in the upper limits of normal size with slight ventricular prominence. She also had a treadmill exercise test and at the time of this her resting tracing was within normal limits and she walked a total of nine minutes . . . The doctor [David M. Pugh, M.D., see pp. 1385–1386, *supra*] stated that the

claimant has mild hypertension with most readings over the past years in the 152/90 range and has probable recent onset of angina pectoris [and that] . . . . :

> > 'She would be Class II based on the Guide to the Evaluation of Impairment, American Medical Association, with symptoms, angina, produced after 3 to 4 blocks of level walking. We believe that she could participate in mild physical activity such as caring for herself and light household duties or sedentary work elsewhere. She should not be required to perform moderate or heavy physical activity.'

> "Thus, the better medical evidence shows that the claimant does have a mild heart condition with increased blood pressure. However, the evidence does not show that the claimant has sufficient handicaps as a result thereof to prevent her from engaging in all forms of substantial gainful activity. It is noted the claimant complained additionally of difficulty in bending because of her feet and legs which hurt her. However, the overall evidence does not substantiate a severe impairment that would prevent the claimant from doing light housework or washing dishes, which was her former occupation. It is noted that she worked at the Hotel Phillips until i[t] closed, then she worked at Nichols' Luncheon washing dishes. She subsequently worked at Putsch's for a period of time. She stated she left the job because she worked so good the other workers did not contribute and she had it all to do. She asked for more money from her employer because the other employees did not cooperate or do what she thought was a fair share of the work and the supervisor told her no. So she left that job.

> "It is interesting to note, too, that since her last operation, she has applied for jobs but was not hired because they told her she was too old to do the work. This indicates the claimant felt that she was

---

**15.** This report does not purport to constitute evidence of the existence of the jobs thus mentioned "in significant numbers either in the region where (plaintiff) lives or in several regions of the country." Section 423(d)(2)(A), Title 42, United States Code.

able to do the work and was attempting to obtain employment.

"In summary, the claimant has had multiple surgeries from which she recovered and has a mild condition as a result of hyperten[s]ion at the present. However, she recently had a treadmill exercise test which was considered normal. The medical evidence does not show that the claimant has a severe cardiovascular condition. In reference to her pain in legs and back, there is no medical evidence to show any reason for such pain. Furthermore, the claimant states she can walk three or four blocks before she has any chest pain which is relieved by rest."

On September 29, 1975, the Appeals Council of the Social Security Administration affirmed the decision of the administrative law judge without further opinion. "Accordingly, the hearing decision stands as the final decision of the Secretary in [her] case." [16]

*Judicial Review of the Secretary's Decision*

As noted above, the principal mission of the federal district court is to determine whether the Secretary's decision is supported by substantial evidence. But, to constitute evidence which will result in a judicial affirmance of the Secretary's decision, the evidence must be such that a reasonable man would accept as supporting the decision.[17] And the entire administrative record must be considered. It does not suffice to sequester a portion of that record which may support a finding of non-disability and consider it in isolation from the remainder of the record.[18]

Therefore, it is incumbent upon the administrative law judge to apply correct legal standards in making his decision and to make all the findings of fact which are necessary to resolve the material factual issues. See, e. g., *Pollard v. Gardner*, 267 F.Supp. 890, 893 (W.D.Mo.1967). It is fundamental that, in determining whether a claimant suffers an inability to engage in any substantial gainful activity, the Secretary is to consider the cumulative effects of all of the claimant's impairments. "In evaluating whether a claimant is capable of engaging in any gainful activity it is essential that the Secretary view the individual as a whole. It is senseless to view several disabilities as isolated from one another . . . ." *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1973). " 'All complaints must be considered together . . . in determining work capacity.' " *Haskins v. Finch*, 307 F.Supp. 1272, 1279 (W.D.Mo. 1969). In the administrative action here under review, the claimant complained of hypertension, recurring pain in her abdomen (which she claims prevented her from accomplishing almost any "bending" of her body), pain and swelling in her left foot and knee, shortness of breath, recurrent polyps of the colon, a systolic murmur with AV nicking, degenerative arthritis in the left ankle and a heart which borders on being enlarged. Further, with respect to each of her complaints, the medical reports which were submitted in the administrative proceedings tend to show that they result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Section 423(d)(3), Title 42, United States Code. Nevertheless, in determining that the severity of plaintiff's impairments would prevent her from engaging in substantial gainful activity, the administrative law judge considered them singly, rather than in combination. In fact,

16. This statement was made by the Appeals Council in their letter of September 29, 1975, notifying plaintiff of their action on her request for review. (Tr. 3.)

17. "Substantial evidence" means "evidence that 'a reasonable mind might accept as adequate to support a conclusion'." *Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996, 998 (1st Cir. 1975).

18. "But in determining whether there is substantial evidence to support the examiner's finding a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusion. We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

in making his determination, he relies almost wholly upon the medical report and opinion of David M. Pugh, M. D., whose examination and findings were devoted solely to determining the degree of hypertension and angina pectoris which the plaintiff might suffer. There is no indication that the administrative law judge considered the cumulative effect of all plaintiff's complaints and ailments. And, in fact, he purports to find only that she "does have a mild heart condition with increased blood pressure." For this reason alone, therefore, remand of this action to the Secretary of Health, Education, and Welfare for the application of the proper legal standard in making his findings is warranted.

 It appears, further, that if plaintiff's hypertension and angina pectoris are viewed properly under the regulations of the Secretary of Health, Education, and Welfare, she may be able to produce evidence that she suffers from one of the types of impairments listed by the Secretary in Subpart P, Appendix, Title 20, Code of Federal Regulations. If so, she would be entitled without a further showing to a period of disability.[19] See Section 404.-1506(a), Title 20, Code of Federal Regulations, providing that:

"The Listing of Impairments describes, for each of the major body systems, impairments which—

(1) Are of a level of severity deemed sufficient to preclude an individual from engaging in any gainful activity; and

(2) Are expected to result in death or to last for a continuous period of not less than 12 months."

The following diseases are listed by the Secretary in Subpart P, *supra*, which may be applicable to plaintiff:

"4.03 *Hypertensive vascular disease* (apply this section if diastolic pressures are consistently in excess of 100 mm. Hg.). With:

A. Hypertensive retinopathy evidenced by hemorrhages, or cotton wool patches, with reduction in the caliber of the arterioles and arteriovenous crossing defects (or papiledema); or

B. Impaired renal function as described under the criteria in § 6.02; or

C. Cerebrovascular damage as described under the criteria in § 11.04; or

D. Congestive heart failure as described under the criteria in § 4.02; or

E. Angina pectoris as described under the criteria in § 4.06, § 4.07, or § 4.08.

"4.07 *Angina Pectoris* (as defined in § 4.00D) associated with the standardized ECG exercise test abnormalities (see § 4.00E) in the absence of digitalis (in the presence of digitalis, the predigitalis ECG should be evaluated), showing one of the following:

A. Development of depression of ST segment to more than 0.5 mm. which lasts for at least 0.12 seconds and appears in at least 2 consecutive complexes in any lead; or

B. Development of bundle branch block

Plaintiff, on the evidence which is presently in the administrative record, shows some, but not all, of these requirements.[20] Such

---

**19.** In fact, in order to obtain disability benefits, it would not be necessary to show a degree of severity equal to or greater than that described in the listings. In Section 404.1506(a), Title 20, Code of Federal Regulations, it is noted that the impairments which are listed by the Secretary in Subpart P, Appendix, of the same title are deemed to be "of a level of severity deemed sufficient to preclude an individual from engaging in *any gainful activity*." (Emphasis added.) In order to be entitled to disability benefits, however, (as opposed to widow's benefits and certain other types of social security benefits), a claimant need only meet the lesser standard of showing that he or she is unable to engage in any *substantial* gainful activity. See *Hollis v. Mathews*, 520 F.2d 338, 340 (5th Cir. 1975).

Therefore, if plaintiff can show that she meets the requirements of the listing, she must automatically thereby show that she meets the requirements of Section 423(d)(1), Title 42, United States Code, pertaining to ordinary disability.

**20.** With respect to the listing relating to "hypertensive vascular disease," the medical evidence which is in the administrative record does not show that she suffers "diastolic pressures which are consistently in excess of 100 mm. Hg." but it does show an increase over the past several years in her average blood pressure and heart rate. For example, her pulse was 72 in June 1974 and 82 in April 1975. During 1974 and 1975, her blood pressure ap-

evidence as has been submitted, however, shows that the other necessary evidence may be readily available or "readily obtainable" within the meaning of *Hess v. Secretary of Health, Education, and Welfare,* 497 F.2d 837 (3d Cir. 1974). Therefore, "[c]laimant should be entitled to have the views of her treating physicians more fully developed." *Landess v. Weinberger, supra,* at 1189.[21] And remand is therefore proper for this separate and independent reason. This is particularly so when the onset of plaintiff's angina pectoris was relatively recent at the time the administrative decision was made on September 29, 1975, and plaintiff met the "earnings requirement" until September 30, 1976, and thus might claim a period of disability commencing on or before that date.[22]

■ Further, the administrative law judge makes no specific finding regarding whether he has accepted or rejected the plaintiff's subjective complaints of pain and, if he accepts them, whether he has considered them in combination with the other impairments in determining whether plaintiff is able to engage in any substantial gainful activity. If plaintiff's complaints are true, and she suffers pain with the slightest bending of her body and increasing pain in walking and other body movements, her ability to perform even sedentary work must be regarded as highly questionable. Further, the medical evidence which has been submitted to date shows considerable clinical support for plaintiff's subjective complaints.[23] The governing cases are clear to the effect that "[p]ain, in itself, may be a disabling condition." *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1973). "Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971).[24] When no finding is made respecting the credibility of the plaintiff's subjective complaints, remand to the Secretary for proper assessment of the pain factor is proper.[25]

---

peared to be variously measured at 150/95 and 140/95 and, on one occasion, had previously been measured at 160/100. See note 13, *supra.* Further, her angina pectoris is reported to have some recent onset. Thus, when the administrative hearing was held on May 23, 1975, and plaintiff met the earnings requirements through that date and was entitled to show a disability having an onset date on or before September 30, 1976, a remand is warranted to give her an opportunity to make the required showing. See note 21, *infra.*

21. While plaintiff may well be able to show that she suffers from a listed impairment, she need not necessarily do so to be entitled to a period of disability. See note 19, *supra.* She may well show that, by reason of impairments which approach the listings in the degree of their severity plus other impairments, considered in combination, she suffers from the inability to engage in any substantial activity.

22. See note 20, *supra.*

23. "She states that the foot hurts when she walks as much as two blocks and that the pain eases off with rest . . . She does have a mild degree of osteoarthritis involving her knee . . ." Report of Dr. Slentz, June 25, 1974, Tr. 99–100. (See and compare *Thorne v. Weinberger,* 530 F.2d 580, 582 (4th Cir. 1976), to the effect that "all of the medical testimony connects Ms. Thorne's unquestionable pain to her deteriorating back condition.") Dr. Slentz also notes that she has had "pain in her left foot and knee" for "at least 8 years." (Tr. 98.) Plaintiff may also suffer pain for other reasons which are perhaps attributable to her angina pectoris, hypertension, or other ailments.

24. Some cases have held that the claimant's subjective complaints alone cannot, without more, be the sole basis of a finding of disability; that there must be some corroboration by medical evidence. *Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir. 1974). But cf. *Wilson v. Weinberger,* 398 F.Supp. 1071, 1074 (E.D.Pa. 1975) ("As we understand the law in this field, no medical or clinically observable symptomatology is necessary for a finding of disability based on subjective complaints.") All the cases agree, however, that subjective complaints cannot wholly be ignored and must be evaluated with other, corroborating medical evidence.

25. The administrative law judge may not ignore the claimant's subjective complaints of pain. *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972). But he may elect to disbelieve them if he specifically finds them incredible. *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969). Failure to make explicit findings on this

Remand is also proper to grant the Secretary the opportunity to call a vocational expert, if necessary,[26] and to make a showing of the availability of jobs which plaintiff can perform in the national economy.[27] The finding of the administrative law judge, on the basis of the evidence currently in the administrative record, that plaintiff could return to work as a dishwasher or waitress is not supported by any substantial evidence. All of the subjective and objective evidence is in agreement that plaintiff suffers pain, shortness of breath, and other symptoms from sustained walking and that she cannot be expected to perform the repeated lifting and other movements required by dishwashing.[28] Even Dr. Pugh, whose report, as noted above, focuses only upon plaintiff's hypertension and angina pectoris, concludes that she could not be expected to perform even "moderate . . . physical activity." And, when a social security disability claimant makes a showing of her inability to return to her former type of work by reason of her impairments, that shifts to the Secretary the burden "of coming forward . . . with proof that there are substantial job opportunities in the national economy." *Meneses v. Secretary of Health, Education and Welfare*, 143 U.S.App.D.C. 81,

442 F.2d 803, 807 (1971); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975); *Garrett v. Richardson*, 471 F.2d 598, 603 (8th Cir. 1972). Remand is proper for this purpose also.[29]

Finally, remand is necessary for the purpose of granting the Secretary an opportunity to correct the application of improper legal standards by the administrative law judge. In evaluating the evidence, the administrative law judge draws inferences adverse to plaintiff from (1) her possible ability to perform housework and (2) her unsuccessful attempts to obtain employment. The authorities are clear, however, that the ability to perform sporadic and infrequent household tasks cannot be equated with the ability necessary to perform substantial gainful activity.[30] And, with respect to a claimant's unsuccessful attempts to work, it has been variously held that evidence of such constitutes proof in favor of disability[31] and that it is irrelevant,[32] but it has never been held that a claimant should be penalized for attempting to obtain and perform compensable work.

Further, the plaintiff has moved for remand of this action and has shown good cause[33] therefor. It is therefore

issue, however, may lead to the conclusion by the court that the complaints of pain were ignored. *Baerga v. Richardson*, 500 F.2d 309, 312 (5th Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1973); *Chester v. Mathews*, 403 F.Supp. 110, 114 (D.Md.1975).

26. "Where . . . the essential issue relates to the capacity of the claimant to perform a specific job and there is no other evidence directly on that issue, in order for the record to be fully and fairly developed, a vocational expert should be called." *Johnson v. Richardson*, 486 F.2d 1023, 1025 (8th Cir. 1973).

27. See note 15, *supra*.

28. See note 23, *supra*.

29. *Willem v. Richardson*, 490 F.2d 1247, 1249 (8th Cir. 1974).

30. See *Willem v. Richardson, supra* note 29, at 1249, n. 4.

31. In *Walston v. Gardner*, 381 F.2d 580, 586, 587 (6th Cir. 1967), it was held that the unsuc-

cessful seeking of employment can be considered and, in effect, lighten the claimant's burden of producing evidence. ("Where an applicant has unsuccessfully attempted to secure employment, less evidence is needed to support a finding of disability than where the applicant has failed to make such an effort.") But see, apparently to the contrary, *Bartell v. Cohen*, 445 F.2d 80, 82 (7th Cir. 1971) ("Plaintiff's attempts to secure employment are relevant only to her motivation and not to whether she was, in fact, disabled . . .")

32. See note 31, *supra*.

33. Remand is proper within the meaning of Section 405(g), Title 42, United States Code, when "the evidence *gathered* by the examiner" from the claimant's physicians "does not in any way develop the extent of her disability." *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974) (Emphasis in original.).

ORDERED that plaintiff's motion to remand this action to the Secretary of Health, Education, and Welfare be, and it is hereby, granted and this action is accordingly remanded to the Secretary of Health, Education, and Welfare for the taking of additional evidence and the making of new findings in accordance with the foregoing considerations.