**Richard L. ABAIR, Sr., Plaintiff,**

**v.**

**SECRETARY, HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 82–0421–F.**

United States District Court,
D. Massachusetts.

Aug. 2, 1984.

---

Merry L. Nasser, Lesser, Newman, Souwine & Nasser, Northampton, Mass., for plaintiff.

Marianne Bowler, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM

FREEDMAN, District Judge.

Plaintiff Richard L. Abair, Sr.[1] filed an application for disability insurance benefits on June 26, 1972, alleging disability owing to a heart condition. Tr. 75. On initial consideration, plaintiff was found under a disability as of April 9, 1972, owing to arteriosclerotic heart disease and a question of myocardial infarction. Tr. 88. In June 1980, plaintiff was informed that his continuing eligibility for disability insurance benefits was scheduled for review. Tr. 90–91. In October 1980, the Social Security Administration ("SSA") determined that plaintiff's disability had ceased as of July 1980. Tr. 102. Upon reconsideration, the SSA affirmed the termination of plaintiff's benefits. Tr. 117. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which hearing was held on February 9, 1982. Both the plaintiff, represented by counsel, and a friend, Joan Benoit, testified at the hearing.

On March 31, 1982, the ALJ found that plaintiff's disability had ceased no later than July 1980. Tr. 21. The Appeals Council denied plaintiff's request for review on October 20, 1982, Tr. 4–5, making the ALJ's decision the final decision of the Secretary of Health and Human Services ("Secretary") and thus subject to judicial review. 42 U.S.C. § 405(g).

Plaintiff applied for disability benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–433 ("Act"). Under § 423(d)(1)(A),

> [t]he term "disability means ... [the] inability to engage in any substantial gainful activity by reason of any medical-

---

1. Plaintiff died of cardiopulmonary arrest on August 13, 1983. His widow, Barbara Abair, as Administratrix of her husband's estate, has been substituted as party plaintiff. To avoid confusion, however, I shall call Mr. Abair the plaintiff throughout this Memorandum.

ly determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

*Id.*

Furthermore,

an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

 The case of *Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6–7 (1st Cir.1982), clearly explains the sequential inquiry and shifting burdens of proof involved in a disability determination. First, is the claimant currently employed? If yes, he is not disabled. Second, if the claimant is not employed, does he have a severe impairment, that is, one that significantly limits his physical or mental capacity to perform basic work-related functions? Third, if the claimant is impaired, is his impairment equivalent to or worse than one of the impairments listed in Appendix 1 to 20 C.F.R. §§ 1501–1599? If yes, the claimant is automatically considered to be disabled, without consideration of his age, education level, or work experience. Fourth, if the claimant is impaired, but does not have the equivalent of an Appendix I impairment, does claimant's impairment prevent him from performing work of the sort he has done in the past? The claimant has the burden of proof on this question. Fifth and finally, if claimant can no longer do his former work, can the claimant perform other work found in the economy? The Secretary has the burden of proving this issue. To ease that burden,

the Supreme Court in *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), sanctioned the use of "the Grid"— the Medical-Vocational Guidelines set out at Appendix 2 to 20 C.F.R. §§ 1501–1599— which tells the Secretary if a claimant, given his particular age, education level, previous work experience and residual functional capacity in light of his impairment, is or is not disabled within the meaning of the Act.

In plaintiff's case, the Secretary did not make specific findings that plaintiff was severely impaired or that plaintiff was unable to return to his former job. However, the Secretary, having determined that plaintiff was capable of light work, applied Rule 202.21 of the Grid to plaintiff. I therefore conclude that these subsidiary findings are implicit in the Secretary's decision.

On review of the Secretary's disability determination, I must uphold the decision of the Secretary if it is supported by substantial evidence. 42 U.S.C. § 405(g). I may also remand the case for the taking of additional material evidence if "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* Having perused the record in this case, I have concluded that the Secretary's finding that plaintiff was not disabled is not supported by substantial evidence. In addition, I have concluded that the case must be remanded to the Secretary for correct evaluation of the evidence currently of record and for the taking of additional evidence.

 Substantial evidence is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Miranda v. Secretary of Health, Education & Welfare,* 514 F.2d 996, 998 (1st Cir.1975) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). In looking for substantial evidence, the Court must review the evidence in the record as a whole, *Rodriguez v. Secretary of Health & Human Services,* 647 F.2d 218, 222 (1st Cir.1981), and not merely "seize upon 'a specific

quantum' of evidence that, taken in isolation, might sustain the administrative decision," *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Embry v. Secretary of Health, Education & Welfare*, 626 F.2d 93, 94 (9th Cir.1980); *Talifero v. Califano*, 426 F.Supp. 1380, 1387 (W.D.Mo.1977). Furthermore, " 'the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *Brand v. Secretary of the Department of Health, Education & Welfare*, 623 F.2d 523, 527 (8th Cir.1980) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975).

The record reveals that plaintiff, at age 23, was hospitalized with a pulmonary embolism. Tr. 152. Though he was put on anticoagulants, plaintiff suffered recurrent thrombophlebitis and eventually underwent a vena cava ligation in 1970. Tr. 151. In 1972, plaintiff had a myocardial infarction which left him with an aneurysm of the left ventricle. *Id.* Plaintiff had recurrent, severe chest pain over the years, for which he took nitroglycerin. Plaintiff was also a heavy smoker. Tr. 152.

Plaintiff had worked as a tire changer and a fire fighter. Plaintiff did not work between 1972 and April 1980, when he was elected cemetery commissioner in Ludlow, Massachusetts. Tr. 49. Plaintiff was forced to quit this part-time job in early July 1980, when he went into the hospital for serious chest pain brought on by stress of the job. Tr. 158.

At the hearing, plaintiff and Joan Benoit testified about plaintiff's activities. In the few years before his death, plaintiff was unable to sit for more than one-half hour at a time because the clamp from the vena cava ligation caused his legs to swell painfully. Tr. 39, 51. For the same reason, plaintiff could not stand for any length of time. Tr. 40–41. Plaintiff had to lie down frequently to relieve the swelling. Tr. 53. Plaintiff did no housework. Tr. 66. Plaintiff used to read and watch television a lot. Tr. 59–60. He occasionally walked around

malls, drove his truck and engaged in his hobby, woodburning. Tr. 56–57. Plaintiff was taking nitroglycerin for chest pain, Coumadin (an anticoagulant) and Valium. Plaintiff testified that his chest pains came on with the slightest physical exertion or anxiety. Tr. 64.

Plaintiff's treating physician, Dr. Francis Meyers, in a letter of October 14, 1980 and in a deposition dated February 8, 1982 stated that plaintiff had severe heart disease and angina pectoris brought on by both exertion and emotion. In the deposition, Dr. Meyers said plaintiff got chest pains after walking on a flat surface of approximately one block. Tr. 196–97.

In addition to his serious physical ailments, plaintiff was afflicted with "a tremendous number of emotional problems." Tr. 184. In March 1981, he was admitted to the Wing Memorial Hospital in Palmer, Massachusetts with a diagnosis of severe personality disorder with violent behavior. Upon discharge, he was deemed to be "improved," but the diagnosis was explosive personality. Tr. 176.

■ The Secretary's decision to discontinue plaintiff's benefits is not supported by substantial evidence. In denying plaintiff benefits, the Secretary relies on the "fact" that plaintiff began complaining of chest pain early in 1980 when he learned his benefits were to stop. The Secretary finds it "incredible" that Dr. Meyers would state in his deposition that plaintiff had had pain since July 1972. This conclusion is completely contrary to the record. Plaintiff's chest pain is well-documented since 1968. *See* Tr. 216, 120, 143, 213, 149, 214 and 206.

The Secretary also stresses an "inexplicable change" in Dr. Meyers' assessment of plaintiff's well-being. Apparently, on October 6, 1980, one Roger St. Fort, a disability examiner for SSA, contacted Dr. Meyers by phone and elicited from him that plaintiff was able to do light or sedentary work, to wit, three hours standing per day, unlimited daily sitting and one to two hours of walking. Tr. 156–57. The Secretary contrasts this second-hand report with Dr.

Meyers' unsolicited follow-up letter of October 14, 1980 and his sworn deposition testimony of February 1982, in which Dr. Meyers attests to the severity of plaintiff's heart disease and angina. Viewing the record as a whole, *Rodriguez, supra* p. 1064, the Court is of the opinion that there is no substantial evidence to support the Secretary's finding of an inexplicable change in Dr. Meyers' assessment.

The Secretary thinks it significant that there had been no objective worsening of plaintiff's symptoms to go along with the deterioration of plaintiff's subjective condition. This logic, if not backwards, is at least irrelevant. The Court does not address the issue of whether it is not, in fact, the Secretary's burden in disability termination cases to come forward with evidence that the claimant has improved,[2] however, the Court notes that in termination cases the claimant is definitely under no burden to show deterioration. At the most, plaintiff must show he is still disabled.

The Secretary gives much weight to another report—a telephone contact—between plaintiff's widow and an SSA district office. In this report, Mrs. Abair says plaintiff was working thirty hours per week on the average at his cemetery job. Tr. 150. Although Mrs. Abair and the plaintiff were living together at this time, they were not getting along. Tr. 54.

Plaintiff did admit that there might have been a few weeks in which he did work thirty hours, *id.,* but in any case it is clear that plaintiff was unable to keep the job longer than three months because of his chest pain.

The Secretary finally stresses the report Dr. Meyers prepared when plaintiff was discharged from the hospital in early July 1980. Apparently, the medical staff at Cooley Dickinson Hospital was of the opinion that plaintiff's chest pain was owing to a muscular injury, and that plaintiff had no angina pectoris.[3] Tr. 151, 156. This report, of course, contrasts with extensive evidence of plaintiff's angina. Tr. 143 ("definite angina"), 214 ("angina that is caused by emotion or exertion"), 185 ("angina pectoris"), 176 ("angina pectoris"), 184 ("angina pectoris"), 200 ("chest pain of the sort probably consistent with angina").

The Court is unwilling to seize upon the specific quantum of evidence the Secretary found so significant in order to sustain her determination under the substantial evidence standard. Reliance on the above-discussed discrete items of evidence in the face of massive evidence of plaintiff's severe heart disease from a young age just will not wash. In fact, it is clear from the evidence that plaintiff was not only incapable of doing light work, but also that he was unable to hold even a sedentary job.[4]

---

**2.** The Court notes an evolution in the direction of shifting the burden of production. *See, e.g., Haynes v. Secretary of Health & Human Services,* 734 F.2d 284, 288 (6th Cir.1984); *Dotson v. Schweiker,* 719 F.2d 80, 82 (4th Cir.1983); *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir. 1983); *Patti v. Schweiker,* 669 F.2d 582, 586–87 (9th Cir.1982). However, since neither side has briefed the issue, the Court declines to decide the question at this time.

**3.** Angina pectoris, as distinguished from other kinds of chest pain, is an "acute pain in the chest caused by interference with the supply of oxygen to the heart." B. Miller & C. Keane, *Encyclopedia and Dictionary of Medicine and Nursing,* 47 (1972).

**4.** According to 20 C.F.R. § 404.1567,
(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

█ Unfortunately, this case must be remanded to the Secretary, 42 U.S.C. § 405(g). On remand, the Secretary should take into consideration the fact that the plaintiff died of cardiopulmonary arrest on August 13, 1983, when he tried to do some work. Obviously, this evidence is material to plaintiff's claim of disability owing to a heart condition and the reason it was not made part of the record before the Secretary is that plaintiff was still alive. *Cf. Parks v. Harris,* 614 F.2d 83 (5th Cir.1980) (remand to Secretary so she can make her determination in light of additional highly relevant and probative evidence outside the record).

█ Furthermore, it is clear from the record that the Secretary failed to correctly evaluate plaintiff's subjective complaints of pain. It is well-settled that "pain may reach a disabling level," *Miranda, supra* p. 1064, at 1000. In light of the extensive documentation in the record of plaintiff's fifteen-year history of chest pain, *see supra,* p. 1065, it was error for the Secretary to reject plaintiff's complaints of pain and to fail to consider them in determining whether plaintiff was able to work.

█ Finally, the Secretary failed to consider the effect of the combination of plaintiff's impairments, namely, plaintiff's heart disease and his psychological problems. *See Stewart v. Harris,* 509 F.Supp. 31, 35 (N.D.Calif.1980); *Gray v. Califano,* 448 F.Supp. 1142, 1144 (S.D.Calif.1978); *Spaulding v. Califano,* 427 F.Supp. 982, 989 (W.D.Mo.1977).

Upon proper consideration of plaintiff's untimely death, pain and psychological problems, it may turn out that plaintiff in fact had an impairment equal to or worse than one of the impairments listed in Appendix 1 to 20 C.F.R. §§ 1501–1599. If this is the case, then plaintiff would automatically be considered disabled. *Goodermote, supra* p. 1064, at 6–7.

However, if the Secretary determines that plaintiff was not suffering from an impairment equivalent to one listed in Appendix 1, then the Secretary will have to hear the testimony of a vocational expert in order to determine if plaintiff could have performed other work in the economy. Often the Secretary can use the Grid instead of taking expert testimony, but where, as here, it is clear that the plaintiff was unable to do even sedentary work and the plaintiff suffered from a combination of physical and mental impairments, the plaintiff's disability does not fit into one of the Grid's nice, neat categories and the Secretary must take expert testimony to meet her burden of proving there are jobs the plaintiff can do. *Torres v. Secretary of Health & Human Services,* 677 F.2d 167, 170 (1st Cir.1982). The testimony of the vocational expert is unquestionably material, and the reason it was not incorporated into the record earlier is because the Secretary determined that plaintiff fit into the Grid. *See* 42 U.S.C. § 405(g).

The decision of the Secretary that plaintiff was not disabled between July 1980 and August 13, 1983 is REVERSED and the case is REMANDED for further proceedings consistent with this Memorandum.

An appropriate Order shall issue.

### ORDER

In accordance with the reasons set forth in the Memorandum of this same date, the Secretary's decision is REVERSED and the case is REMANDED in order that the Secretary may

1) consider plaintiff's untimely death;
2) properly consider plaintiff's subjective complaints of pain;
3) consider the combination of plaintiff's impairments; and
4) take the testimony of a vocational expert if necessary.

It is So Ordered.