Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellant.

v.

Celeste R. MAXWELL, Appellee.

No. 19987.

United States Court of Appeals
Fifth Circuit.

April 4, 1963.

———◆———

Macon L. Weaver, U. S. Atty., Terry Huffstutler, Jr., Asst. U. S. Atty., Birmingham, Ala., John G. Lauglin, Jerry C. Straus, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., for appellant.

Henry H. Mize, Tuscaloosa, Ala., for appellee.

Before TUTTLE, Chief Judge, and POPE * and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by the Secretary of Health, Education and Welfare from an order of the United States District Court for the Northern District of Alabama which reversed a determination by the Secretary that appellee was not entitled to old-age insurance benefits from certain income she derived in 1958 and 1959 from leased land. Jurisdiction was vested in the district court by 42 U.S.C. § 405(g). The Secretary had held that this income did not constitute "self-employment income" as defined in the Social Security Act, 42 U.S.C. § 411(a) (1), because the appellee had not within the meaning of the Act "materially participated" in the production of agricultural commodities on the land in 1958 and 1959.

Section 211(a) (1) of the Act, 42 U.S. C. § 411(a) (1), as amended in 1954, placed self-employed farmers within the coverage of the Act for the first time, but rentals from crop shares were still ex-cluded from coverage under these amendments. However, in 1956, in order not to treat so harshly landlords who were actively involved in commodity production, and who would have an income loss with the onset of old-age or disability, Congress included the "material participation" exception to the exclusion of real estate rentals. Under this amendment, rental or crop share income was included only if (A) such income is derived under an "arrangement" between the owner and another individual, which provides that the other individual shall produce agricultural commodities and that there shall be "material participation by the owner" in the production or management of the production of such commodities *and* (B) in fact there is material participation by the owner, 42 U.S.C. § 411(a) (1).

This section, although worded in the form of an exception to an exclusion, is still clear enough to evince the same Congressional intent to protect those persons whose income diminishes or is wiped away because of old age or disability, and to exclude those whose income continues to come in in spite of old age or disability.[1] In other words the fruits of someone else's labor or talents were not to be included in "net earnings from self-employment" of self-employed farmers any more than income from dividends on shares of stock or interest on bonds. See 42 U.S.C. § 411(a) (2).

Appellee had a life interest in a 375 acre farm, of which approximately 75 acres were in cultivation during the years in question. She operated her farm on a crop share basis, on which the sharecroppers performed all of the labor. During the years in question there were five sharecroppers on the farm, none of whom was living thereon. It was orally agreed between appellee and the sharecroppers that she was to receive one-third of the corn produced and one-fourth of the cotton. Appellee was to supply one-fourth

---

* From the Ninth Circuit, sitting by designation.

1. The 1956 amendments were to give the farmer "equitable treatment as compared with those brought in earlier." Sen.Rep. No. 2133, 84th Cong., 2d Sess. See U.S. Cong. & Adm.News, 84th Cong., 2d Sess. 1956, p. 3915.

of the cotton seed, one-fourth of the fertilizer and poison expenses for the cotton, but no part of the expenses incident to the corn production. The tenants furnished their own tools. Three of the tenants grew only corn, one, only cotton, and one, both corn and cotton.

The question for determination by the Secretary at the administrative hearing and appeal therefrom was whether Mrs. Maxwell "materially participated" in the production or management of the production of the farm commodities within the meaning of the Act during the years 1958 and 1959. The Secretary found that she did not. However, the question here for determination, as we view the provisions of the Act, 42 U.S.C. § 405(g), and the one which should have been paramount in the district court, is whether the findings of the Secretary as to any fact (here, appellee's participation in the production or management of production) were supported by substantial evidence, for if they were, they "shall be conclusive."

The hearing examiner found that appellee did not materially participate in the management of the farm, nor did she materially participate through substantial financial contributions or assistance to the sharecroppers. Furthermore the examiner found that there was no evidence of an "arrangement" within the terms of 42 U.S.C. § 411(a) (1) (A) that appellee was to "materially participate" in the management of the production of the commodities.

The district court found the facts before it to be "almost identical" to the ones in Henderson v. Flemming, 283 F.2d 882 (5th Cir., 1960), and reversed the administrative decision of the Secretary; the court said further that Henderson held that "the acts of an agent of a lessor would be attributed to the lessor if the agent actually engaged in activities that would have constituted material participation had the lessor performed the activities himself." Then the court found that appellee's stepson materially participated in the management of the farm, and, as appellee's agent, could be said to have been acting for appellee within the

meaning of the Henderson case. This was an erroneous finding by the district court. Its finding was probably based upon a statement made by the stepson in a prior Questionnaire (covering a different period) that he considered himself the "overseer of this place in the interest of my mother." However, the stepson himself testified at the hearing that he no longer managed the farm for her. So, at the outset, we find that the agency ruling of the Henderson case is inapplicable here. Thus the problem resolves itself around appellee's own efforts in managing the farm.

Appellee stated in her Farm Arrangement Questionnaire that "I would see the crop occasionally and see how it was progressing. * * * They would come to me and ask me what kind of cotton seed to get, how much poison, and about the land, what I thought of it and what to plant on what particular tracts of land."

Statements by the tenants in their Farm Arrangement Questionnaires conflicted somewhat with appellee's statements at the hearing and in her Questionnaire. One tenant stated that appellee never consulted with him about anything, and only looked over the crop "every now and then." Another tenant testified that "she more or less left the farming up to the individual who had the land, but still advised them." One of the tenants stated that she would go out and look at the crops about three times a week, and that she told him when to plant the cotton and when it ought to be thinned.

Even appellee, when asked at the hearing whether the tenants needed to be told what to do, testified that "they knew what to do." The stepson also testified that the sharecroppers "more or less know exactly what they are going to do" and they require a "minimal amount of supervision." Furthermore, the remainder of appellee's testimony indicated a very limited participation by her in the management of the farm and very little, if any, dependence by her tenants upon her advice in the running of the farm. We thus conclude that the Secretary's finding that the

appellee did not materially participate in the management of the farm was supported by "substantial evidence," and the district court erred in reversing this finding.

Now we come to the consideration of whether appellee's financial contribution to the operation of the farm was substantial enough in itself to warrant the district court's reversal of the hearing examiner's finding that it was not. This court said in Henderson, supra,

"An owner of land who is required to (and does) furnish substantial amounts of cash, credit or supplies toward this mutual undertaking which are reasonably needed in the production of the agricultural commodity and from the success of which he must look for actual recoupment likewise makes a 'material participation.'" 283 F.2d at 888.

■ Appellee's financial contributions were proportionately small when considered with the expenditures of the tenants. She allegedly only furnished one-fourth of the expense for the cotton seed, and one-fourth of the expense for the fertilizer and poison for that seed; and only two of the five tenants grew cotton. Appellee furnished none of the expenses for the growing of the corn, and four of the five tenants grew corn. So overall, her expenses were small not only in actual dollars, which was determined to be 27 and 44 dollars in the two years, respectively, but percentagewise when considered with the expenses of the tenants. Furthermore, in Henderson the expenses were great, not only dollarwise, approximately $4500 yearly, but also proportionately, on a fifty-fifty basis. Thus we conclude that the Secretary's finding that the appellee did not materially participate through financial contributions was "supported by substantial evidence" and the district court erred in reversing the Secretary's findings.

■ Furthermore, we find that there was no "arrangement" between the ap-

pellee and the tenants for the material participation by the appellee in the management of the production of the commodities in question. The only evidence of any "arrangement" in advance of any actual participation was that appellee was to furnish a small portion of the expenses. There was no agreement or arrangement, at least insofar as any evidence indicates,[2] that the appellee was to manage the farm or to participate in the management of the farm. Under the provisions of 42 U.S.C. § 411(a) (1) (A), appellee failed to establish coverage.

■ We have not attempted on this appeal to review the record and weigh the evidence in order to come to an independent conclusion as to the ultimate question of "material participation" by the appellee in the management of the farm. Neither this court, nor the district court in the first instance, is free to substitute its findings of fact for those of the Secretary, if there is substantial evidence to support those findings and inferences. Hoffman v. Ribicoff, 305 F. 2d 1, 6 (8th Cir., 1962), Gainey v. Flemming, 279 F.2d 56, 58 (10th Cir., 1960). Furthermore, where two inferences may reasonably be drawn from undisputed facts, the inference given to the facts by the Secretary may not be disturbed. Hoffman v. Ribicoff; Gainey v. Flemming; Carqueville v. Flemming, supra. Also where the evidence presents conflicts, it is for the Secretary to draw the inference from these conflicts, and this inference should not be disturbed. Gainey v. Flemming, supra. It is only where there is no substantial evidence from which the Secretary could have made his findings that the district court, and this court, may modify or reverse the decision of the Secretary.

We hold that the findings of the Secretary, made by his hearing examiner, were "supported by substantial evidence," and that the district court erred in reversing the finding of the Secretary that appellee was not covered by the provisions of 42

---

2. The burden of proof to establish the required conditions for eligibility is on the claimant. Carqueville v. Flemming, 263 F.2d 875 (7th Cir., 1959).

U.S.C. § 411(a) (1) of the Social Security Act.

The order of the district court is reversed. The case is remanded to the district court with directions to vacate its judgment and remand this matter to the Secretary for further proceedings not inconsistent with this opinion.