George **WALKER**, Plaintiff,

v.

**John W. GARDNER,** Secretary of Health, Education and Welfare, Defendant.

No. NA 63–C–62.

United States District Court
S. D. Indiana,
New Albany Division.

Jan. 24, 1967.

Mead & Mead, Salem, Ind., for plaintiff.

Richard P. Stein, U. S. Atty., Indianapolis, Ind., for defendant.

## OPINION

DILLIN, District Judge.

The plaintiff brought this action to review a final decision of Anthony J. Celebrezze, as Secretary of Health, Education and Welfare, denying his application for a period of disability and disability benefits, as authorized by the Social Security Act, as amended, 42 U.S.C. § 416(i) and § 423. This court has jurisdiction of the action pursuant to 42 U.S.C. § 405(g). It has been submitted upon the transcript of the record, and the defendant's motion for summary judgment, with supporting brief. Plaintiff's counsel has not filed a brief, as required by our local rules, but we will nevertheless consider the case on its merits. The court takes judicial knowledge of the fact that John W. Gardner succeeded the said Anthony J. Celebrezze as secretary on August 18, 1965, and he is accordingly substituted as defendant herein.

Plaintiff, who was born in rural Kentucky on October 4, 1908, attended public school until about seventeen years of age and then quit, having succeeded in progressing only through the eighth grade. He is partially literate, and of dull-normal intelligence. His life work has consisted, in the main, of working as a common laborer in and around saw mills and in performing farm labor for himself and others. He has been so ineffective as a wage earner that his total earnings, as reported for purposes of the Social Security Act, amounted to only $6,897.71 from the inception of the law in 1937 through 1961.[1]

On December 4, 1958, plaintiff filed his first application for disability insurance benefits, stating that he had done no work in either 1957 or 1958 because of Parkinson's disease, which rendered him unable to work in October, 1956. This application was properly denied without a hearing on the merits, upon a determination that he did not, at that time, meet the special earnings requirement of the Act, as amended. Final action was taken by the Secretary on April 15, 1960. Thereafter, he proceeded to obtain additional quarters of coverage, sufficient to meet the special earnings requirements of sections 216(i) (3) and 223(c) (1) of the Act, as amended, as of January 17, 1962, the date upon which the application under review was filed.

The manner in which applicant acquired eight additional quarters of coverage for the years 1960 and 1961 must be noted, as it would appear prima facie that if he was able to work at substantial gainful employment for the two years immediately preceding his application he would not be disabled, in the absence of a dramatic change in condition. However, examination of the record discloses, without doubt, that his "self employment earnings" for 1960 and 1961 were earned only in a legal sense, and without substantial physical effort on his part.

---

1. It should be noted that farmers were not subject to the Act until 1954.

What actually happened was that a neighbor rented applicant a small tract of ground for a period of two years for the growing of tomatoes on a share crop basis. The landlord furnished all the fertilizer, farming machinery and equipment, and half of the plants. Applicant furnished the other half of the plants and the labor. The lease was actually negotiated by applicant's 17 year old son, who did all the plowing of the ground and setting of the plants. Applicant's said son, four younger children, and some hired pickers picked the tomatoes, and the landowner hauled them to the cannery and sold them. The proceeds were divided 50-50 between applicant and the landowner after the expense of the plants and fertilizer was deducted.

Applicant's sole contribution to the project, other than to sign the lease his son negotiated, was to pay back the landowner for half of the plants after the crop was harvested, furnish the labor of his children, and hoe a few weeds. This operation and a tobacco patch grossed applicant the sum of $1,685.66 in 1960, and $2,659.64 in 1961; after deduction for hired labor and other expenses, the net figures for the two years were $680.-64 and $701.26. At the end of the two years, the lease expired by its terms, and his son became emancipated and left home. Thus ended the farming operation.

Defendant argues that plaintiff's position is impossible. If he was able to work in 1960 and 1961, his claim fails for want of disability. If not, argues the Secretary, he and his two lay witnesses (one of whom was the landowner in the tomato enterprise) should be presented to a grand jury for a conspiracy to obtain the eight quarters of wage credits fraudulently. We are not impressed.

■ The Secretary has overlooked the fact that under the common law, which prevails in Indiana, Burns Ind. Stat.Ann. Section 1–101 (Fourth), a father is entitled to the services and earnings of his minor children. 1 Bl.

Comm. 453. Such right is a property right. Siebeking v. Ford, 1958, 128 Ind. App. 475, 148 N.E.2d 194. Therefore, plaintiff had a right to the benefits of the labor of his children, and when he exercised such right by receiving the proceeds of that labor, he obviously had a legal duty to report such income to his government and pay the FICA taxes thereon imposed by law. That the consequence of his payment of taxes may benefit him here is immaterial, and should not stultify his case in any regard. The quid pro quo for the Government's imposition of FICA Taxes is that it will pay disability benefits in appropriate cases to individuals whose payment of such taxes are sufficient to enable them to meet the special earnings requirement.

■ That plaintiff's lease ran from a person who later testified as a lay witness as to plaintiff's physical condition is likewise immaterial. Such facts may tend to prove compassion on the part of the landlord-witness, but we are not advised that compassion equates with conspiracy; certainly the terms of the lease in question show it to have been an arms length transaction, with substantial benefits flowing to the landlord.

The case is therefore to be considered as an ordinary one, with the sole question being whether or not the findings of the Secretary are supported by substantial evidence. We find that they are not.

The evidence is undisputed that for at least six years prior to the date of hearing, plaintiff had had a constant, severe tremor of his head, and moderately severe tremors of his arms, legs and body, of the type associated with Parkinson's disease. For three years prior to such date, the tremor was of such severity that he was unable to shave himself. In addition, he suffered from a duodenal ulcer, and weakness in his legs upon mild exertion, such as walking for two blocks. Three medical doctors have diagnosed his condition as Parkinson's disease, chronic and progressive. Two of them have stated the opinion that the condition is severe and totally disabling.

Two lay witnesses testified that they had observed claimant frequently for a period of years, that his tremors were constant, that he was incapable of doing a day's work as a farm hand, and that no one in the community would hire him, for such reason.

██ The expert opinions of plaintiff's treating physicians as to plaintiff's disability and inability to engage in any substantial, gainful employment are binding upon the referee if not controverted by substantial evidence to the contrary. Teeter v. Flemming, 7 Cir., 1959, 270 F.2d 871, 77 A.L.R.2d 636. Kerner v. Flemming, 2 Cir., 1960, 283 F.2d 916. Testimony of lay witnesses is also entitled to consideration. Underwood v. Ribicoff, 4 Cir., 1952, 298 F.2d 850.

██ The evidence of the defendant's medical experts controverts the diagnosis of Parkinson's disease. One states that plaintiff suffers from a conversion reaction, manifested by tremor, weakness, and slow sensory responses. Another states that he has both a conversion reaction and a depressive reaction. The third feels that he may be in need of shock therapy. What is significant about this testimony is not what it controverts, but what it does not controvert. In short, the medical experts disagree as to the exact cause of plaintiff's condition, but defendant's experts do not dispute the existence of the condition, nor that it is disabling. They merely ascribe the condition to a mental, rather than a physical ailment. They do not offer a scintilla of testimony that plaintiff is able to perform any substantial, gainful employment.

██ It is well established that disability as defined in the Social Security Act may be a result of physical or mental impairments, or a combination of both. "(T)here is no need to consider mental and physical condition separately. We have come too far in our knowledge of the relationship of mind and body totally to truncate one from the other in our considerations. Just as all physical and all mental impairments must be taken into account in determining the extent of disability, so may physical and mental impairments in their totality result in a finding of disability." Farley v. Celebrezze, 3 Cir., 1963, 315 F.2d 704. And purely subjective symptoms may sustain a finding of disability. Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757. For a detailed discussion of the disabling effects of anxiety neurosis, see Miracle v. Celebrezze, 6 Cir., 1965, 351 F.2d 361, beginning at page 375.

██ The ultimate question in cases of this kind is not as to the exact causation of a disabling impairment. The ultimate questions are (1) does plaintiff have a medically determinable physical or mental impairment, etc., and (2) if so, does it render him unable to engage in any substantial gainful activity? For example, take the case of the individual who suffers from sheer physical weakness which makes it impossible to work; one doctor says he has a chronic coronary insufficiency, while another thinks his problem is emphysema. What difference? The Act concerns itself with results, not exact causes.

██ So in this case, all doctors agree that plaintiff has a severe tremor and bodily weakness. Some doctors say that the condition is totally disabling, and none says that it is not. Whether deriving from physical reasons, or because of a profound psychoneurosis, or both, no physician suggests that plaintiff's condition does not render him functionally unable to work. It has persisted for many years, and shows no signs of going away. The Hearing Examiner, however, gives no weight to the testimony of plaintiff's physicians, relying on certain administrative regulations. In this he is in error. Hall v. Celebrezze, 6 Cir., 1963, 314 F.2d 686.

██ Determination of a claimant's disability may depend on more than clinical findings. In addition to objective medical facts and expert medical opinions, the Hearing Examiner must

consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, educational background, and work experience. Mode v. Celebrezze, 4 Cir., 1966, 359 F.2d 135; Ber v. Celebrezze, 2 Cir., 1964, 332 F.2d 293.

The Examiner appears to conclude that plaintiff is not disabled from farming. In addition to being contra to all of the testimony of the medical and lay witnesses, such conclusion cannot stand, because it is based on findings which find no support in the record. He states (Tr., p. 11) "In this connection the testimony of claimant to the effect that he was self employed as a farmer during the period 1957 through 1959, both inclusive, and in addition worked for other farmers in his area, cannot be overlooked." Plaintiff's testimony on this point was consistently that the work done was "little," "part time," and "not very much," and it is significant that his earnings were not sufficient to entitle him to as much as one quarter of coverage for any of the three years involved. Earnings of this type are not sufficient to prove ability to engage in a *substantial* gainful activity, under the Secretary's own regulations. 20 CFR 404.1534(d); Flemming v. Booker, 5 Cir., 1960, 283 F.2d 321.

It appearing that the findings and conclusions of the Secretary are not supported by substantial evidence, they are contrary to law. The defendant's motion for summary judgment is therefore denied.

The plaintiff has not asked for summary judgment, but under the uncontradicted evidence that he is totally disabled from working, he is entitled thereto. 6 Moore's Federal Practice 56.12, p. 2242; Potomac Insurance Company v. Boles, D.C.S.Ind.1962, 205 F. Supp. 879.

The Clerk will enter judgment for the plaintiff in accordance herewith, reversing the decision of the Secretary and remanding this cause for allowance of plaintiff's claim.