**Freddie L. WILSON, Plaintiff,**

v.

**Robert FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 2553.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Dec. 10, 1970.

Martin J. Miller, Legal Aid Society of Mecklenburg County, Charlotte, N. C., for plaintiff.

Keith S. Snyder, U. S. Atty., and David B. Sentelle, Asst. U. S. Atty., for defendant.

## PRELIMINARY STATEMENT

McMILLAN, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Secretary of Health, Education and Welfare denying the plaintiff's application for disability insurance benefits as provided by Section 223 of the Act, 42 U.S.C. § 423. Both parties have moved for summary judgment.

## FINDINGS OF FACT

The evidence consists of the testimony of the plaintiff at the hearing on May 1, 1969, thirty-one pages in length, plus medical reports from Dr. J. B. Greenwood; Dr. George G. Culbreth, a neurosurgeon; Dr. Marshall L. Fisher, a psychiatrist; and Dr. David S. Johnston, an orthopedic surgeon.

The plaintiff is a Negro man, born in 1944, unmarried, about 5'–10" and 160 pounds, 4–F in the draft, living alone in an apartment. He had no driver's license at the time of the hearing because of failure to pass the written test. His education was tenth grade, his mental capacity low.

Plaintiff testified that at the time of the hearing he was working as a bag boy bagging groceries at Harris-Teeter Super Market, forty hours a week at $1.-75 per hour. He had worked at a Holiday Inn restaurant and was discharged. He has trained at Universal Window to be a glass cutter and window installer and was discharged for sickness, perhaps because of an allergy to paint. He had worked at Huttig Sash and Door priming windows and cutting glass, and at Presbyterian Hospital in 1967 as a clean-up man in the kitchen; he quit that job because of back and foot pains. Discovery of a previous broken neck and hospital history contributed to his leaving Presbyterian. He had worked in the kitchen at Community Hospital, at the Manger Motor Inn and at the Hotel Charlotte. He had also worked as a paper boy for the Charlotte Observer and as a caddy sometimes at two local golf clubs.

Describing his symptoms, plaintiff says he has pain all over; in his feet, legs, arms, neck and back; also in his chest and his heart. He does not smoke nor drink. He gets dizzy and has some trouble using his fingers. His reading and other educational activities are limited. His feet are in "bad shape" and he has had operations on his feet. He says he has no means of support except work and that wherever he works he has a great deal of pain and discomfort and dizziness. Disability payments from the Welfare Department were stopped some time ago. His work as a bag boy at Harris-Teeter required standing on his feet for the entire day except lunch time, causing pains in his feet and body.

When employers find out his medical history and condition he runs the risk of being fired, and he has been discharged from some employments because of his medical history and continuing symptoms.

Plaintiff has no special training which would qualify him for office or other lighter work. Vocational rehabilitation advisors recommended that he learn how to do shoe repair work or "working in a fishing camp." He is allergic, he says, to shoe polish and smoke and dust. He tried to get help from the Charlotte Area Fund but was unsuccessful.

The medical reports are not numerous. Dr. J. B. Greenwood's hospital record of March 15, 1961 describes an admission to Mercy Hospital where it was discovered that the patient had a broken neck with damage to his spinal cord and some loss of sensory movement and perception. He was kept in traction several weeks and recovered from a state of near general paralysis to a point where he could walk and was discharged wearing a brace.

Dr. Marshall Fisher examined the plaintiff on December 19, 1968. His findings cover nearly three single-spaced pages which describe a condition of generalized pain, stiffness in the hands, difficulty in writing, fatigue, depression, discouragement, anxiety and tension which fail to respond to drugs prescribed.

His memory is deficient. He has little contact with his family; he appears to have continuing stiffness and disability perhaps resulting from the neck fracture. He has difficulty working and earning a living. He is isolated and retarded, incapable of doing any substantial mathematical computations, cannot subtract nor add nor write legibly, and is confused about well known current events. The doctor refers to him as "somewhat of a derelict of an individual" and one who "presents a disabling level of psychiatric problems of a severe character by comparison to that which it would require of him to be able to perform profitably for himself" (T. 114). Dr. Fisher's summaries on page 115 of the record are as follows:

"1. Mental deficiency that is severe. Trainable level: not educable. I. Q.: Approximately 60.

"2. Mixed Mood Disorder and Hypochondriacal Preoccupation, suggesting levels of Disabling Psychlothymic Variations, associated with Depression and periods of Hyper-activity.

"3. Degree of Disability: Severe."

Dr. David S. Johnston's report of examination dated January 10, 1969 is as follows:

"His examination on 8–22–68, referrable to his low back, right arm, and chest was within normal limits and I was unable to account for these symptoms on the basis of his orthopedic examination. However, I did note that he had considerable deformities of both feet. He had surgery on both of his feet approximately a year ago by the Charlotte Orthopedic Clinic and he still complains of pain in his feet and lower legs. His x-rays and examination revealed a serpentine type flatfoot, which can be considerably disabling.

"I think Mr. Wilson would be disabled from doing work which required prolonged walking, standing, lifting, or carrying."

In 1967 or 1968 apparently the plaintiff had surgery on both feet and the doctors were in 1968 discussing the possibility of bilateral triple arthrodeses on his feet (these operations, if the court correctly understands their nature, would leave both ankles stiff).

There is not a scintilla of evidence in the entire record, including the medical reports, that the patient has the ability to "engage in any substantial gainful activity" except the fact that he works as a dishwasher, bag boy, paper boy or whatever low grade employment he can get in order to feed and clothe himself.

## CONCLUSIONS OF LAW

██ It is well established that even though a plaintiff is gainfully working at the time of his application he is not necessarily precluded thereby from receiving disability benefits under the Social Security Act. As the court stated in Hanes v. Celebreeze, 337 F.2d 209, 214 (4th Cir., 1964):

"Where the evidence discloses that the claimant, in spite of severe and disabling impairment, is impelled to perform work 'to keep the wolf from the door,' his earnings should be given little significance."

This evaluative procedure discussed in *Hanes* was reaffirmed in Leftwich v. Gardner, 377 F.2d 287, 290–291 (4th Cir., 1967) where the court set forth the proper standard of review; that is:

"* * * whether objectively and in the totality of circumstances, including especially his afflictions, he [the claimant] is disabled within the meaning of the Social Security Act."

Where the plaintiff, despite his disablement, chooses to support himself or his family, he should not be penalized because of his endurance in the face of pain and adversity. The fact that plaintiff was employed at the initiation of this suit does not provide a conclusive answer to the question of plaintiff's "ability to engage in substantial gainful employment." In view of the overwhelming uncontradicted evidence establishing disability, the Secretary's conclusion derived merely from the extent of the

plaintiff's earnings should not stand. *Hanes, supra,* 337 F.2d at 215.

The court concludes that there is no substantial evidence to support the Secretary's denial of benefits, that no suitable employment opportunities are available to the plaintiff, and that the plaintiff is entitled to disability benefits under the Act.

It Is Therefore Ordered that the plaintiff's motion for summary judgment is granted, and that the Secretary pay benefits for appropriate periods of disability.