Henry FLORES, Plaintiff,

v.

DEPARTMENT OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.

No. 77 Civ. 3515 (WCC).

United States District Court,
S. D. New York.

Dec. 12, 1978.

Bronx Legal Services, Corp. C., New York City, for plaintiff; John Bowers, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Thomas H. Belote, Sp. Asst. U. S. Atty., New York City, Borge Varmer, Regional Atty., Region II, Diana M. Weiner, Asst. Regional Atty., Department of Health, Education & Welfare, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This is an action under Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to review the decision of the Secretary of Health, Education and Welfare ("Secretary") denying plaintiff Henry Flores ("Flores") disability insurance benefits. Both parties have moved for judgment on the pleadings.

*The Facts*

Flores was born in New York City in 1929. He attended school through the ninth grade. When he was 15 or 16, he sustained a gunshot wound in his left leg which resulted in a fracture of the femur. He was treated initially at Harlem Hospital and later at various other hospitals in New York City. Flores underwent several operations on his left leg, including the installation of a metallic plate in his left femur. A sympathectomy was performed to sever nerves leading to his leg so as to relieve the severe pain in 1971. The operation does not appear to have been effective. In 1975, Flores was referred by Lincoln Hospital to the Foot Clinics of New York for treatment by podiatrists there. He was a patient at the clinic from June 1975 to February 1976 when he expressed dissatisfaction with his progress there and again became an outpatient at Lincoln Hospital.

During most of this period, Flores was gainfully employed. After recovering from the gunshot wound, Flores went to work as a packer for Real Blouse. In 1963, he became a shipping clerk for Ocean Side Wire Company ("Ocean Side") and remained with the company until it laid him off due to a general slowdown in business in October of 1975.

After being laid off, Flores applied for unemployment compensation. He received his first payment on January 12, 1976. On February 10, 1976, Flores applied for disability benefits. His application was refused and the decision reaffirmed on reconsideration. A hearing was held. The Administrative Law Judge's ("ALJ") denial of the claim was affirmed by the Appeals Council, making it the final decision of the Secretary. Flores brought suit in this Court seeking review of the agency decision.

*Discussion*

In order for an individual to be entitled to disability insurance benefits, he must demonstrate that he is disabled within the meaning of Section 223(d)(1), 42 U.S.C. § 423(d)(1), of the Act.[1] An individual is disabled if his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . ." Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A).

The ultimate burden of persuasion is on the individual seeking disability benefits. Both parties agree, and by now the law is well-settled, that to meet this burden a claimant must prove that he is unable to

---

1. That section states:

"(d)(1) the term 'disability' means—
 (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;"

work at his former employment due to his impairment. If he does so, the burden of going forward shifts to the Secretary who must then demonstrate the existence of available employment compatible with the claimant's impairment. See, *e. g., Stark v. Weinberger*, 497 F.2d 1092 (7th Cir. 1974); *Grable v. Secretary of H. E. W.*, 442 F.Supp. 465 (W.D.N.Y.1977); *Talifero v. Califano*, 426 F.Supp. 1380 (W.D.Mo.1977); *Robinson v. Richardson*, 360 F.Supp. 243 (E.D.N.Y.1973). If the Secretary meets the requirement, the plaintiff bears the burden of proving that he is unable to engage in *any* substantial gainful employment.

■ In assessing a disability claim, the factors to be taken into account are (1) the objective medical facts; (2) diagnoses or medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant and family or others; and (4) the claimant's educational background, age and work experience. *Gold v. Secretary of H. E. W.*, 463 F.2d 38, 41 n.2 (2d Cir. 1972).

■ Under Section 205(g) of the Act, the Secretary is given the initial responsibility for making findings of fact and decisions regarding the merits of a claim of disability. It is within his province as trier of fact to weigh all the evidence and resolve any material conflicts. See *Richardson v. Perales*, 402 U.S. 389, 399–400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Federal courts must accept as conclusive any finding of fact made by the Secretary, if supported by substantial evidence. Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Richardson v. Perales, supra*, 402 U.S. at 401, 91 S.Ct. at 1427, *citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "However, it 'must do more than create a suspicion of the existence of the fact to be

established'." *Kenny v. Weinberger*, 417 F.Supp. 393, 397 (E.D.N.Y.1976), *citing NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 83 L.Ed.2d 660 (1939). The court is bound to "scrutinize the whole record to determine whether the Secretary's findings have rational support in the evidence relied upon, and if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary, the court may then interfere with the Secretary's conclusion." *Hofacker v. Weinberger*, 382 F.Supp. 572, 576 (S.D.N.Y.1974). See *Talifero v. Califano, supra*, 426 F.Supp. at 1387. *Cf. Celebrezze v. Maxwell*, 315 F.2d 727, 730 (5th Cir. 1963).[2]

The record in this case includes the medical reports of three doctors who examined Flores at the request of the Social Security Administration. Dr. Herman Rothman, an internist, examined plaintiff on March 20, 1976 and found that "extremities showed marked atrophy of the left leg." He concluded that Flores is "disabled because of the vascular disease in the left foot and leg and atrophy of the left leg." Dr. Murray J. Rosenzweig, a radiologist, examined Flores and provided his report of the radiographic examination to Dr. Morton Finkel, a neurologist. Dr. Finkel examined Flores on July 1, 1976 and found that he had "marked atrophy of his left leg and weakness of his gastrocnemius muscle." He found that Flores could not "dorsiflex his toes or foot on the left," had "good hamstring and quadriceps muscles, his deep tendon reflexes were equal, except for an absent left ankle jerk," and "[h]is left ankle is held rigid and cannot be flexed." Dr. Finkel's diagnosis "was left femoral nerve injury, causing weakness of his left leg and making it difficult for this patient to walk more than two blocks or stand for more than one hour, however, he could carry ten pounds and could possibly work while seated." His conclusion was ". . . I think this patient

2. The Second Circuit has observed that "the Social Security Act is remedial or beneficent in purpose, and, therefore, to be 'broadly construed and liberally applied'." *Cutler v. Wein-* *berger*, 516 F.2d 1282, 1285 (2d Cir. 1975), citing *Gold v. Secretary of H. E. W.*, 463 F.2d 38, 41 (2d Cir. 1972).

is incapacitated at the present time. I think he should be re-evaluated for incapacity in six months." The only other medical report that is part of the record before the Court is Flores' treatment record at the Foot Clinics.

Flores appeared at the hearing without counsel[3] and testified as to his physical condition and work history. He stated that had Ocean Side not laid him off, he would probably have been forced to resign as a result of his poor health. Flores stated that "even during work I was constantly complaining and it was bothering me severe." (Transcript at 27.)

"You remember I was working but I was getting, still I was working—the reason I had to work because I had my kids. And then I was forcing myself, but then as the years go by I was getting constantly—the pain was getting more severe and then my left foot was cold and numb, I didn't have any kind of feeling, no blood reaction was going down there to the foot, it was like ice. And I was getting constant pins and needles and every now and then all the time my left left [sic] would get, it would be—I could be sitting, sleeping, walking sometimes, it would kick, the nerve would just kick it out, you know, and then it was, I couldn't—I would walk a few blocks, a couple of blocks, it would bother me." (Transcript at 22–23).

In *Gold v. Secretary of H. E. W.,* *supra,* 463 F.2d at 42, the Second Circuit stated that "[t]he expert opinions of plaintiff's treating physicians as to plaintiff's disability . . . are binding upon the referee if not controverted by substantial evidence to the contrary." (Citing *Walker v. Gardner,* 266 F.Supp. 998, 1002 (S.D.Ind.

1967)). See *Walston v. Gardner,* 381 F.2d 580 (7th Cir. 1967) (Absent countervailing substantial evidence, finding contrary to such medical opinions "in the realm of speculation"). See also *Grable v. Secretary, supra,* 442 F.Supp. at 470; *Terio v. Weinberger,* 410 F.Supp. 209, 212 (W.D.N.Y.1976). This principle should apply equally to the expert opinions of doctors selected by the Social Security Administration to examine a claimant. "Although doctors' opinions on the issue of disability are not binding on an ALJ, an ALJ cannot arbitrarily substitute his own lay judgment for the opinion of doctors." *Grable v. Secretary, supra,* 442 F.Supp. at 470. Therefore to uphold the Secretary's decision that Flores is not entitled to disability benefits, it will be necessary to find substantial evidence in the record to controvert the findings of disability made by the doctors selected by the Administration.

The ALJ concluded that Flores was capable of performing substantial gainful activity prior to February 22, 1977, because he received state unemployment compensation benefits through that date, and by receiving these benefits certified that he was "ready, willing and able to work." (Transcript at 3, 4). The ALJ found that plaintiff's claim for disability benefits for the period after February 1977 was premature since an applicant for disability benefits must be disabled for five months to meet the Act's entitlement requirement. Section 223(a)(1)(D), (c)(2). The ALJ reviewed the medical reports and Flores' testimony and while he made no specific findings on this evidence, he did state some of his conclusions. It is unclear from his decision whether he concluded that Flores was able to perform his former occupation or that

---

**3.** Flores requests that the Court, as an alternative to reversing the decision of the Secretary, remand the matter on the ground that he was not apprised of the availability of free legal assistance. Since the Court decides the motions on other grounds, it will not be necessary to reach this issue. The Court notes, however, that the examiner could have been more helpful on this point. See *Cutler v. Weinberger, supra,* 516 F.2d at 1286.

"Now, Mr. Flores, you know you had the right to come in with a representative but you don't need one if you don't want one and I presume you did not care to bring one in because you didn't care to avail yourself of that right; is that correct?

"CLAIMANT: Yeah, that's true but I mean, I don't have any funds to bring a representative [sic] anyhow.

"ADM. LAW JUDGE: Yeah." (Transcript at 16).

Flores was able to engage in other substantial gainful work. He stated:

> "There is some evidence that the claimant cannot return to his prior work experience as a shipping clerk which required him to be on his feet for most of the day. However, there is other evidence indicating that the claimant could perform in a sedentary type of occupation." (Transcript at 8).

The Secretary contends that the ALJ found that Flores failed to establish that he could not return to his former occupation and therefore failed to carry his burden of persuasion, and that there is substantial evidence to support this finding. The Secretary argues that the following facts constitute substantial evidence to controvert the medical findings: (1) that Flores continued to work at his last job for over eight months while claiming to be suffering from the same symptoms upon which both doctors based their findings of disability;[4] (2) that plaintiff was laid off from his last job because of a slowdown in business instead of being forced to quit due to his condition; (3) that plaintiff, upon being laid off, applied for unemployment benefits from the State of New York, not disability benefits, and that receipt of such benefits meant that plaintiff was able to work.

This Court rejects the Secretary's argument and concludes that plaintiff made a *prima facie* showing that he was unable to work at his former occupation. The ALJ made no findings that Flores' work history was evidence of his ability to return to his former employment. He relied almost exclusively on Flores' receipt of unemployment benefits in denying the claim.[5]

The problem with the Secretary's contentions is that they are raised for the first time in this suit. No evidence was introduced by the Secretary at the hearing or made part of the record that would support the theory of the case being presented by the Secretary herein:[6] that the fact that

4. The Secretary alleges that the medical reports from the Foot Clinics, Lincoln Hospital and Doctors Rothman and Finkel all show Flores to have the same physical impairments such as absent left ankle jerk and limited motion of the left foot and ankle joint, as well as the same complaints, such as that the pain in Flores' "heel bone ran up the posterior aspect and along the lateral aspect of the heel and would at times radiate from the heel up to the groin." Defendant's Brief at 12. The Secretary thereby concludes that Flores' condition remained constant and so if he were able to work in October 1975 he could return to work now as a shipping clerk.

It is not surprising that the doctors all noted the same physical impairments since Flores testified that his condition is a longstanding one. However, that he used the same words to describe his pain to doctors over a period of two to three years does not establish that medically, his condition did not change. The fact that Flores became dissatisfied with the treatments at the Foot Clinics, whose records note that they had been unable to relieve his pain, and began treatments again at Lincoln Hospital, supports the view that his condition was deteriorating. The ALJ appears to have taken this view of the facts since he states, regarding Flores' filing of a new application for disability benefits after his unemployment benefits end, "if his condition *continues to*

*worsen*" Flores should reapply. (Transcript at 8) (emphasis supplied).

5. The examiner's findings of fact dealt solely with this issue. He found:

> "3. The claimant continued to receive unemployment benefits through February 22, 1977.

> "4. In receiving such benefits, the claimant represented that he was ready, able and willing to work according to law.

> "5. The claimant's disability has not continued for at least five or six months subsequent to his inability to engage in substantial gainful activity."

6. The Second Circuit's comments in *Kerner v. Flemming*, 283 F.2d 916, 922 (2d Cir. 1960) are particularly appropriate.

> "We recognize that the Department must process many thousands of disability applications annually and that it is impracticable to treat even the relatively small proportion that go to hearing with the elaboration of the trial of a personal injury case. We do not insist upon anything approaching that; and the time and effort required to make an adequate record are often less than what is needed for an effort, necessarily vain, to distill supportable conclusions from an inadequate one. In sharp con-

Flores was able to work at Ocean Side despite his impairment until business reasons necessitated his being laid off proves he would be able to return to his position as a shipping clerk. Instead, the evidence in the record supports the medical opinions that Flores would be physically unable to return to his previous job. One such piece of evidence is the ALJ's examination of Flores.

"Q. They laid you off?

"A. Right.

"Q. So if they hadn't laid you off, you would probably be still working there, right?

"A. No, no, because even during working I was constantly complaining and it was bothering me severe . . .." (Transcript at 27).

"Q. Well, what if they called you back, what would happen?

"A. I—I tell you, I would go and try but I cannot do anything strenuous and I can't—

"Q. The point I'm trying to make is: You got laid off, right; and you were able to work?

"A. Yes.

"Q. At what point did you feel that your condition got worse or what, what happened?

"A. No, when I was working my condition was so getting worser, but I was forcing myself.

"Q. Well, what if they call you up, say after this was over, after your last check is gotten from the unemployment, and they say okay, come on back to work, we got work for you; what would happen then?

"A. Well, I would have to tell them, I'm sorry but it's not that I don't want to work, but my back hurt, my thigh hurt and my leg and I just—I get so I can't even take a—can't even walk a couple of blocks with-

out . getting pains . . .." (Transcript at 30–31).

Another is the conclusion reached in a report of the Social Security Administration filed in response to Flores' request for reconsideration of his claim. The report states: "Although the claimant has a significant impairment, he should be able to perform sedentary work. The original injury occurred 20 years ago and he worked many years after. *However, currently he is not able to perform his customary work.*" (Transcript at 48, emphasis supplied).

 Nor would the facts on which the Secretary relies preclude Flores from developing a *prima facie* case as a matter of law. Courts have allowed claimants who continue to remain employed for financial reasons, despite severe and disabling impairments, to prove that they were disabled within the meaning of the Act. See, e. g., *Hanes v. Celebrezze,* 337 F.2d 209 (4th Cir. 1964); *Wilson v. Finch,* 325 F.Supp. 196 (W.D.N.C.1970). The test for disability is not whether a claimant "by willpower can stay on his feet yet another day—but whether objectively and in the totality of circumstances, including especially his afflictions, he is disabled within the meaning of the Social Security Act." *Leftwich v. Gardner,* 377 F.2d 287, 291 (4th Cir. 1967). The fact that a claimant left his employment for other than medical reasons does not bar his claim for disability benefits. In *Talifero v. Califano, supra,* the court found no substantial evidence in the record to support the ALJ's finding that a former dishwasher and waitress who had left her old job over a salary dispute could return to her former employment. In *Dillon v. Celebrezze,* 345 F.2d 753 (4th Cir. 1965), the successful claimant was a miner who had been laid off when the mine he worked in closed. He applied for disability benefits from the date he was laid off, claiming he would have had to stop work in any event due to his impairment. In *Kenny v. Wein-*

---

trast to the course adopted with reference to disability determination of the Veterans Administration, 38 U.S.C. § 211(a), Congress has seen fit to subject the Secretary's decisions to judicial scrutiny. Even with the limited scope of

review conferred, a court cannot properly sanction a decision in a proceeding of this nature reached with such a lack of evidence to permit a rational determination as here."

*berger, supra,* the claimant had been laid off when his ship was decommissioned. He too stated that he could not have worked beyond that date due to his impairment.

Finally, the fact that Flores accepted unemployment compensation does not help to establish that he is able to return to his old job. Even if the Court were to find that the acceptance of benefits establishes that a claimant is able to perform the work the New York unemployment rule requires, see discussion on pages 324, 325, *infra,* it does not require that the recipient be able to perform the duties of his previous job. It states that unemployment benefits shall be paid only to a claimant who is totally unemployed and who is able to engage in his usual employment *or any other* for which he is reasonably fitted by training or experience. N.Y.Labor Law § 591.

■ Having found that Flores met his burden and established a *prima facie* case, it must next be determined whether the Secretary met his burden of demonstrating the existence of available employment compatible with the claimant's impairment. The ALJ's statement that "there is other evidence indicating that the claimant could perform in a sedentary type of occupation" does not satisfy the Secretary's burden. "The rule that a finding of ability to engage in substantial gainful employment cannot be merely theoretical is longstanding in this Circuit." *Maldonado v. Mathews,* 424 F.Supp. 301, 305 (E.D.N.Y.1976) citing *Kerner v. Flemming,* 283 F.2d 916, 921 (2d Cir. 1960).

In *Kenny v. Weinberger, supra,* the court found that contrary to the ALJ's conclusion, the medical evidence and claimant's subjective expressions supported claimant's contention that he was not fit to return to sea duty. No vocational expert had testified as to what jobs the claimant could perform.

The administrative law judge did not identify any specific types of work that the claimant could do except to state that he was not precluded from light and sedentary work. The court stated that:

"The denial of plaintiff's claim in the face of unanimous medical opinion that plaintiff was precluded from returning to his former occupation cannot withstand scrutiny on review. The administrative law judge, a neutral officer, may not take it upon himself to supply evidence the Secretary has failed to produce. Plaintiff having met his initial burden, testimony of a vocational expert was essential on the issue of plaintiff's ability to engage in substantial gainful employment in light of his medical impairment and residual functional capacity. The defendant's motion for summary judgment is accordingly denied. In view of the state of the record, the matter is remanded to the Secretary to afford an opportunity to adduce evidence to overcome plaintiff's *prima facie* showing of eligibility for disability benefits under the Act."

*Kenny v. Weinberger, supra,* 417 F.Supp. at 399.

See also *Maldonado v. Mathews, supra* (claimant's motion for summary judgment granted where no substantial evidence to support vocational expert's position that claimant able to do certain tasks).

■ The Secretary contends that remand to afford an opportunity to adduce evidence to overcome plaintiff's *prima facie* showing is improper in this case since Flores' receipt of unemployment compensation, while knowing of legal requirements for compensation, would make it impossible for him to ultimately prove that he is unable to perform substantial gainful employment.[7] Flores, now represented by counsel, alleges that the ALJ acted improperly in drawing

7. In a footnote, the Secretary contends that plaintiff's receipt of state unemployment compensation precludes his claim for federal disability benefits. The Secretary cites no support for this statement. Cases that deal with the interrelationship of state compensation laws or other federal benefit laws and the Social Security Act hold that a decision by another agency

that an individual is or is not disabled may be given some weight by the Administration but it is not conclusive of a claim under the Act. An independent assessment of the claim must be made by the Administration. See *Cutler v. Weinberger, supra,* 516 F.2d at 1286 and cases cited therein.

an inference adverse to him from his receipt of unemployment benefits. He relies on a line of cases, discussed *supra,* that hold that a claimant for disability benefits should not be penalized for attempting to obtain and perform compensable work. The Secretary alleges that these cases are distinguishable since they do not involve state unemployment compensation but only a claimant making an individual effort to find work.

More directly on point is the Fourth Circuit's opinion in *Lackey v. Celebrezze,* 349 F.2d 76 (4th Cir. 1965). In that case, the claimant had been discharged from his employment, he alleged as a result of his inability to perform his duties due to a disability. The Social Security Administration recognized the claimant's health was impaired but did not consider him disabled. The court found the evidence of disability overwhelming and reversed the District Court's affirmance of the Secretary. Several errors in the Secretary's findings were examined. One such error concerned the claimant's receipt of unemployment benefits.

"The Secretary's conclusion cannot be sustained for an additional reason. Since it is beyond dispute, even according to the most adverse testimony, that the claimant's physical condition prevents his return to work in the coal mines,[1] it was incumbent upon the Secretary to show what, if any, kind of work Lackey could perform and the employment opportunities which are available to him. *Ray v. Celebrezze,* 340 F.2d 556, 559 (4th Cir. 1965). There is a total absence of such evidence from this record. In its place, the examiner points to Lackey's acceptance of state unemployment compensation as evidence of ability to perform substantial gainful activity. His theory is stated as follows: 'that the claimant applied for and received unemployment compensation is corroboration of the fact that he considers himself to be physically able to be employed since the application for such benefits presupposes availability for employment.' *Nevertheless, receipt of unemployment compensation does not in itself prove ability to work.* It is undoubtedly true that such compensation is intended only for those who could work but for the lack of available employment. In this record, however, no showing is made that Lackey actually represented to the state authorities that he was able to work or that he was aware of the legal requirements for unemployment compensation. Under these circumstances, acceptance of benefits for a limited time is scarcely disproof of Lackey's present claim.

[1] The examiner did not, however, make this specific finding." *Id.* at 79. (emphasis supplied).

The persuasive reasoning of the Fourth Circuit in *Lackey v. Celebrezze, supra,* applies to the facts found here. The record does not support the Secretary's contention that Flores was aware of the fact that by accepting unemployment compensation he represented he was actually physically able to work. Flores testified:

"Q. But, you know when you collect this unemployment, every time you collect a check you say you're ready, able and willing to work, you know.

"A. Yeah, but what I'm going to have to do now is after I finish that I'm going to have to go back to Welfare and explain to them that my checks are over and they're going to have to see if they can help me. You know, in the meantime—

"Q. Did you try to get compensation for six months, for the disability not for the employment?

The Secretary contends further that allowing Flores to present evidence that he is disabled where he has accepted unemployment benefits available only to individuals who are able to work would produce "an intolerable situation." Defendant's Brief at 22. If Flores is actually disabled and is certified to receive disability benefits, provision can be made for offsetting the benefits he received from the state to prevent a double recovery. If Flores or any other claimant intentionally makes misrepresentations to receive both benefits, the statutes provide sanctions. See, *e. g.,* N.Y. Labor Law § 594.

"A. I don't know anything on any compensations." (Transcript at 20).

* * * * * *

"Q. Did they—the unemployment people, did they send you out to look for a job (inaudible) help for the checks?

"A. No, they just, you know, there isn't any jobs anyhow, so they just tell me just go and report, I go report and go back." (Transcript at 36).

■ Flores contends that an alternative ground for remanding the case is the ALJ's failure to secure and consider the Lincoln Hospital treatment records. The Secretary contends that this does not constitute "good cause" for remand of the case under Section 205(g) since the records of Lincoln Hospital from December 8, 1970 to May 1976 were considered by some individuals who reviewed Flores' request and that in any event the Lincoln treatment records are merely cumulative of the evidence in the record.[8]

The Court finds that the Lincoln Hospital records were not merely cumulative of the medical records already in the record and should have been obtained. Flores visited Lincoln Hospital several times in the winter of 1976 and on February 1, 1977, just 27 days before the hearing. The records were crucial to the making of an accurate assessment of Flores' condition on the hearing date. Although Flores informed the Social Security Administration before the hearing that he had been under the care of doctors at Lincoln Hospital since early 1976 and informed the ALJ at the hearing that he was taking medication prescribed by doctors at Lincoln Hospital, the ALJ did not obtain the records or question Flores further with regard to his treatment at Lincoln. Nonetheless, the ALJ relied on Dr. Finkel's statement on July 1, 1976 that "I think he [Flores] should be reevaluated for incapacity in six months" for the conclusion that Dr. Finkel had surmised that Flores' condition could improve.

On the facts of this case, drawing an inference adverse to the claimant from this statement was improper. Where a claimant appears without counsel, courts have demanded that the hearing examiner fulfill his or her statutory duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts . . ." *Gold v. Secretary, supra,* 463 F.2d at 43, citing *Hennig v. Gardner,* 276 F.Supp. 622, 624–25 (N.D.Tex.1967). See also *Marbury v. Mathews,* 433 F.Supp. 1081 (W.D.N.Y. 1977); *Selig v. Richardson,* 379 F.Supp. 594, 602 (E.D.N.Y.1974). Where examiners have drawn inferences adverse to claimants based on the absence of records, courts have remanded the cases to the Secretary. In *Williams v. Mathews,* Unempl. Ins. Rep. (CCH) ¶ 15,034 (S.D.N.Y.1976), Judge Frankel stated that:

"If the existence or nonexistence of further records was to be a matter of consequence, the administrative power and ingenuity should be effectively employed. The agency has subpoena power."

In *Hess v. H. E. W.,* 497 F.2d 837, 841 (3d Cir. 1974), readily obtainable information which would have resolved doubts about the unrepresented claimant's right to disability benefits was not secured. The court held that the claimant had not received a full hearing and remanded the case to the Secretary for the taking of additional evidence.

■ Plaintiff, on the record presently before us, has established a *prima facie* case that he is unable to return to his former employment. On remand, evidence to the contrary may be introduced by the Secretary. The Lincoln Hospital records, which now extend to June 1977, should be considered. If the Secretary is unable to overcome plaintiff's *prima facie* showing, the Secretary should be given an opportunity to demonstrate the existence of available employment compatible with plaintiff's impairment. A precise determination of an

---

8. The Court is limited to the record in determining whether the findings of the Secretary are supported by substantial evidence. Extraneous material may, however, be considered in

determining whether to remand "on good cause shown." See, *e. g., Terio v. Weinberger, supra,* 410 F.Supp. at 213.

onset date should be made. Defendant's motion for judgment on the pleadings is denied. Plaintiff's motion is granted to the extent indicated by this opinion.

SO ORDERED.