Donna **FOGARTY**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. CIV–86–386C.**

United States District Court,
W.D. New York.

July 26, 1988.

Erie County Chapter, New York State Ass'n for Retarded Children, Inc., (Judith K. Munger, of counsel), Buffalo, N.Y., for plaintiff.

Roger P. Williams, U.S. Atty. (Daniel C. Oliverio, of counsel), Buffalo, N.Y., for defendant.

CURTIN, Chief Judge.

Plaintiff, Donna Fogarty, filed applications for disability insurance benefits and child's insurance benefits on June 15, 1984. These applications were denied initially and on reconsideration. T. 40–43; 52–54. Plaintiff requested a hearing before an ALJ, and on March 26, 1985, plaintiff and her mother appeared at the administrative hearing without counsel. T. 19. On April 26, 1985, the ALJ found that plaintiff was not under a disability, because she was performing substantial gainful employment. The decision of the ALJ became the final decision of the Secretary when the Appeals Council approved the ALJ's decision on April 26, 1985.

FACTS

Plaintiff is a 36–year old woman who is mildly mentally retarded. T. 108–109, 130. She also suffers from cerebral palsy and a seizure disorder. Plaintiff has an I.Q. of 80. The psychologist who evaluated her noted that she became "distressed in the face of failures" and "seemed to gradually draw close to tears." T. 130. Plaintiff's cerebral palsy causes her weakness in her left hand, and causes her to limp. T. 26, 28, 30, 31. She has difficulty handling small tools, her coordination is poor, T. 110, and she is slow of movement in all situations. T. 99. She testified that she was prone to lose her balance, and had tripped and fallen the week before her hearing. T. 30. Plaintiff also testified regarding her seizure disorder and described a grand mal seizure which had occurred in the month prior to the hearing. T. 27. These disabilities are all substantiated by medical evaluations in the record. T. 98–99, 108–109, 120–123, 130, 142.

Plaintiff attended special classes in the Kenmore, New York schools. T. 22. After her graduation from Kenmore East High School in 1971, she began work as a client of the Niagara Frontier Vocational Rehabilitation Center, in the Centers' sheltered workshop. She continued to work in the sheltered workshop through the time of her administrative hearing in March, 1985. She has never worked outside the sheltered workshop.

Plaintiff testified regarding the special conditions of her work in the sheltered workshop. She stated that she did "light typing, filing, photocopying, and running errands." T. 23. She could not stand for continuous periods, and her supervisors told her to sit and rest when she needed to. Plaintiff testified that when she became upset at work she would go to her counselor for help. T. 30. She worked approximately five hours per day. One of plaintiff's counselors, Nancy Rugnetta stated in an August, 1984 evaluation of plaintiff, that plaintiff's work productivity was at 73% of "competitive production level" and that plaintiff was considered "ready for placement in selective competitive employment." T. 110. Two other counselors for plaintiff, Marie Hochreiter and Eileen Belliotti, stated in a November, 1984 evaluation of plaintiff, that plaintiff's productivity level was 73%, with an error rate of ten to twenty percent and selective competitive employment was a "long term vocational goal." T. 126–127.

Plaintiff worked an average of five hours per day, 25 hours per week at the sheltered workshop until January, 1985, when cutbacks necessitated a reduction in her work hours to 20 hours per week. T. 10. Plaintiff's income from the sheltered workshop for the period 1979–1981 was at a rate of

$2.60 per hour, of which all but $1.29 per hour was subsidized. Her subsidized earnings during this period occasionally exceeded $300.00 per month. Her fully subsidized average monthly earnings in 1982–84 ranged from $265.00 per month to $282.00 per month. T. 9. Plaintiff's unsubsidized income for these periods was approximately one-half of her unsubsidized income. T. 9; T. 75–82.

DISCUSSION

The central issue on this appeal is whether the record supports the Secretary's determination that plaintiff has performed "substantial gainful activity" since 1979. Under Social Security Regulations (20 CFR 404.1520(a)), if the ALJ determines that a claimant has performed substantial gainful activity during the period of claimed disability, then the claimant is found "not disabled" regardless of medical findings. The ALJ determined that plaintiff's work in the sheltered workshop constituted substantial gainful activity, and he therefore denied plaintiff's application for disability insurance benefits or disabled child's insurance benefits. T. 9–10.

Section 404.1574(a)(3) of the Social Security Regulations provides as follows:

(3) *If you are working in a sheltered or special environment.* If you are working in a sheltered workshop, you may or may not be earning the amounts you are being paid. The fact that the sheltered workshop or similar facility is operating at a loss or is receiving some charitable contributions or governmental aid does not establish that you are not earning all you are being paid.... [W]e evaluate work activity in a therapy program ... by comparing it with similar work in the civilian work force or on the basis of reasonable worth of the work, *rather than on the actual amount of the earning.* (Emphasis added.)

However, § 404.1574(b)(4) of the Regulations indicates that actual earnings are an important yardstick for determining whether an individual working in a sheltered workshop has performed substantial gainful activity. That section states:

(4) *If you work in a sheltered workshop.* If you are working in a sheltered workshop or a comparable facility especially set up for severely impaired persons, your earnings and activities will *ordinary establish* that you have not done substantial gainful activity if—

.     .     .     .     .

(v) Your average earnings are not greater than $280.00 a month in calendar year 1979; or

(vi) Your average earnings are not greater than $300.00 a month in calendar years after 1979. (Emphasis added.)

"Earnings" are defined by the regulations as subsidized income. Section 404.-1574(a)(2). As noted, the record indicates that plaintiff's unsubsidized rate of pay was $1.29 per hour during the years for which she claims benefits. Though there are fluctuations in her monthly rate of subsidized income in those years, the ALJ's finding that plaintiff worked an average of no more than 25 hours per week indicates that her average monthly earnings (unsubsidized income) certainly would not have exceeded $200.00 per month. Plaintiff's earnings would therefore "ordinarily establish that [she has] not done substantial gainful activity" during those years, pursuant to § 404.1574(b)(4).

However, despite the guidance provided by this section of the regulations, the ALJ considered "information in addition to earnings," pursuant to § 404.1574(a)(3), above, and § 404.1574(b)(5) and (6). The ALJ stated, "... if there is evidence showing the claimant may have done substantial gainful activity, other criteria regarding comparability and value of services are applied." T. 9. The ALJ stated that the "other information in addition to earnings" to be considered in this case included "whether the [claimant's] work is comparable to that of unimpaired people in the community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work; or whether the work, although significantly less than done by unimpaired people, is clearly worth

$280.00 a month (1979) or $300.00 a month (for years after 1979)." T. 9.

In assessing "other information in addition to earnings," the ALJ relied on the evaluation letters from plaintiff's counselors which stated that plaintiff is working at a 73% work productivity rate, and, in the case of one evaluation, that plaintiff is "ready for placement in selective competitive employment." From these, the ALJ concluded that plaintiff is "working at a level of productivity which is comparable to that of unimpaired people in the community who are performing light assembly or clerical occupations as their means of livelihood." T. 10. The ALJ calculated that in a comparable competitive job situation, plaintiff would earn $91.00 per week if she worked 25 hours per week at minimum wage ($3.65 per hour). T. 10. The ALJ therefore determined that plaintiff's work is "worth" more than $300.00 per month, and that she is performing substantial gainful activity. He therefore denied plaintiff's claim. *Id.*

This court must sustain the Secretary's conclusion only if it is supported by "substantial evidence" in the record as a whole. *Gold v. Secretary, H.E.W.,* 463 F.2d 38, 41 (2d Cir.1972). The court must "scrutinize the whole record to determine whether the Secretary's findings have rational support in the evidence relied upon and if reliance is placed on one portion of the record in disregard of overbalancing evidence to the contrary, the court may then interfere with the Secretary's conclusion." *Flores v. Dept. of HEW,* 465 F.Supp. 317, 321 (S.D.N.Y.1978).

In the instant case, the ALJ stated that, pursuant to 20 CFR § 404.1574(b)(6), the comparability of plaintiff's work to competitive work was to be evaluated "taking into account the time, energy, skill, and responsibility involved...." The ALJ acknowledged that plaintiff "suffers significant physical and mental handicaps as the results of her cerebral palsy, mild mental retardation, and a seizure disorder." T. 10. The facts in the record as a whole indicate, as noted above, that these handicaps seriously restrict the complexity and duration

of the work tasks which plaintiff can undertake, and the independence with which she can undertake them. However, the ALJ made no reference to these difficulties in his assessment of the comparability of plaintiff's work to competitive work. Rather, he gave disproportionate weight to the evaluation report of counselor Nancy Rugnetta, which stated that plaintiff was "ready for placement in selective competitive employment." T. 10.

More fundamentally, the ALJ failed to *develop* the evidence relevant to plaintiff's disability and the comparability of her work to that done by unimpaired people, in clear contravention of the duty of an ALJ to a claimant appearing *pro se.* In this case, that duty was further heightened by the fact that the claimant is mentally retarded. The United States Court of Appeals for the Second Circuit described the duty of the ALJ when a claimant appears *pro se* in *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980):

> If ... the claimant does appear pro se, the ALJ has a "duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts...." (*quoting Gold v. Secretary, H.E.W.,* 463 F.2d 38, 43 (2d Cir.1972); *See, also, Echeverria v. Secretary, HHS,* 685 F.2d 751 (2d Cir.1982); *Leyva v. Harris,* 514 F.Supp. 1313 (SDNY 1981).

When a *pro se* claimant's capacity for self-representation is further diminished by circumstances such as this plaintiff's mental retardation, the duty of the ALJ is obviously even higher. *Poulin v. Bowen,* 817 F.2d 865, 870–72 (DC Cir.1987).

In this case, the ALJ failed at numerous points to explore fully the precise nature of plaintiff's work and the conditions under which she performed it. For example, the ALJ only asked plaintiff for a general description of her clerical work, and did not question her as to the specific nature of that work. T. 23. The plaintiff stated that she had difficulty standing "for a period of time," but the ALJ did not attempt to determine the length of time she could stand, or how long she required for rest breaks. T. 30. Plaintiff stated that when she became upset at work, she would

go to a counselor for help. The ALJ did not inquire how frequently this occurred or what sort of events upset her. T. 30. In general, the record suggests that plaintiff requires a great deal more supervision, tolerance, and emotional support, and a slower pace of work than would be provided in competitive employment. The ALJ clearly owed plaintiff a duty to more fully inquire into the degree to which these restrictions indicated that she was not doing substantial gainful activity in the sheltered workshop. This is especially true in light of plaintiff's low earnings, which would "ordinarily establish" that she was not doing substantial gainful activity. § 404.1574(b)(4).

It is well established that under these circumstances the law requires reversal of the ALJ's decision and remand for a new hearing and other appropriate development of the record regarding plaintiff's eligibility for disability benefits. *Hankerson v. Harris,* supra; *Echeverria v. Secretary, HHS,* supra; *Leyva v. Harris,* supra. Accordingly, this case is reversed and remanded for further proceedings in accordance with this decision and order.

So ordered.